H. L. STEVENS, Appellee, v. CHARLES O. GEAR et al., Appellants.

No. 47505.

(Reported in 39 N.W. 2d 408)

 

█ 

OCTOBER 18, 1949.

McNett, Kuhns & McNett, of Ottumwa, for appellants.

D. W. Harris, of Bloomfield, for appellee.

SMITH, J.—The collision between plaintiff's self-driven auto and defendant Fonken's truck (driven by defendant Gear) occurred at about six p.m., October 17, 1945, on U. S. Highway 63, approximately eleven miles north of Bloomfield, Iowa. Plaintiff was proceeding in a southerly direction, upgrade from the Soap Creek bridge. The truck was northbound.

Plaintiff, Dr. H. L. Stevens, had practiced medicine many years in Floris (a town near the scene of the collision) and in Ottumwa, Iowa; had retired for a short time in 1944, after fifty years of practice; but had returned to Floris to the practice in September of that year, because of the war shortage of doctors in that vicinity.

At the time of the collision he was returning to Floris from the hospital in Ottumwa. He alleges defendant Gear was negligent in failing to yield one half the traveled highway; in failing to keep a proper lookout; and in failing to have the vehicle under control. The last specification was withdrawn at the conclusion of the evidence.

Defendants' answer denies the alleged negligence and plaintiff's freedom from contributory negligence. Defendant Fonken filed counterclaim for property damage to his truck and its contents on account of plaintiff's alleged negligence and in a second count alleged a "full and complete settlement and compromise" with plaintiff whereby the latter orally agreed to pay him $1800 but had failed to pay said sum or any part thereof. A verdict was directed against defendant upon this second count and it was not submitted.

The court submitted to the jury the issue of defendants' liability to plaintiff for alleged negligence of defendant Gear and the issue of plaintiff's liability to defendant Fonken on the latter's counterclaim for property damage due to alleged negligence of plaintiff. The jury returned verdict in favor of plaintiff. against both defendants and judgment thereon was entered from which they appeal.

Five propositions only are advanced on appeal: (1) The testimony of certain witnesses should have been rejected as contrary to clearly established physical facts and verdict for defendants directed against plaintiff on his alleged cause of action. (2) Verdict should not have been directed against defendant Fonken on count 2 of his counterclaim alleging an agreement of settlement. (3) Consideration of the deputy sheriff's accident report should not have been limited to impeachment purpose. (4) Plaintiff's specification of negligence based on failure of defendant Gear to keep proper lookout should have been withdrawn on defendants' motion. (5) Opinion testimony of a former high school teacher as to the laws of force should have been rejected.

I. Defendants' motion to direct verdict is based upon the proposition that the testimony of certain witnesses should be disregarded as contradictory of certain established physical facts and that without this testimony there was not sufficient evidence to support a verdict for plaintiff upon his pleaded cause of action. These witnesses were the occupants of the Aleshire car.

Mr. Aleshire, his wife, and his mother, Mrs. McMain, testified they were traveling north directly behind defendants' truck for several miles immediately preceding the collision, that the

truck was driving most of the time across the middle line of the pavement in such way as to prevent them from passing in spite of their repeated signals which the driver of the truck ignored, and that just before the collision with plaintiff's car the truck was "over past the middle * * * about two or three feet" (Mrs. McMain); "well it was over the black line I should judge three or four feet" (Mrs. Aleshire). Mr. Aleshire says plaintiff's car "never did get over on the left-hand side of the road."

These three witnesses clearly place the collision on plaintiff's side of the pavement and the inference from their testimony is strong as to the negligence of defendant Gear in failing to keep to his own side. It is impracticable and unnecessary to set out their testimony in detail.

Defendants point out variances between the Aleshire version and the testimony of others (including plaintiff) in the matter of time of the collision; the distance they were back of the defendants' truck; their failure to identify other persons at the scene of the accident and of other persons to identify them as being present. The inference is that they were not present at the scene though Mr. Aleshire says he was one of the men who lifted plaintiff from the wrecked car.

Defendants also make much of certain so-called physical facts claimed to be inconsistent with the testimony of the Aleshires: "the rear axle of the truck was broken and turned back and the drive shaft was broken and down, and the axle was sticking out of the housing. * * * the rear axle was broken somewhere in toward the center—toward the differential * * *. The hydraulic brakes were knocked out." With this they couple testimony that grease, presumably from the broken housing, was on the east or defendants' side of the paving "a foot or a foot and a half from the east edge." Another witness says "the big spot of oil was just about at the place where the accident occurred and this was about three feet from the east edge of the pavement. It was nearer the east edge * * * than the center of the road."

Defendants argue, from the appearance of the vehicles after the impact and the fact that there was broken glass on the east side of the highway, that the truck must have been on its own side.

Something is also attempted to be made of the fact that Mrs. Aleshire was unable to describe the truck, to say whether it had a cattle rack, or what was its color or height.

We have studied the record with care and are not prepared to say as a matter of law that the testimony of the Aleshires and Mrs. McMain should have been discarded and a verdict directed for defendants. Much of the argument at this point would be proper to the jury but not to the court. Much of the fact situation relied on as "established" does not have that status. Certainly the discrepancies between witnesses concerning the time of day and failure of witnesses to recognize each other in the dusk as having been at the scene of the collision do not relate to "physical facts" in the sense in which the term is used in the rule invoked by defendants.

The purely physical facts relied on are: The grease or oil spots on the east or the truck's side of the pavement; broken glass on that side; and the condition of the vehicles after the collision.

The grease on the pavement is testified to by defendant Gear, witnesses Lawson and Burger. The last named witness testified to the condition as he first saw it on Sunday, four days after the accident. Manifestly he could not at that late date relate the location of the grease to the exact spot where the collision occurred. Gear places it "about a foot and a half from the east edge of the pavement" and "ten or twelve feet north of where the doctor's [plaintiff's] car sat after the accident." Lawson says: "* * * just about at the place where the accident occurred and this was about three feet from the east edge of the pavement. It followed the truck down on the shoulder of the highway quite a ways." It is a fair inference from Lawson's testimony that he did not actually see the collision. Other witnesses, including the deputy sheriff who investigated the scene that evening, did not see or remember seeing, or did not testify concerning, the grease and its location. We do not view the testimony as fixing the exact location of the impact as an uncontradicted "physical fact" sufficient, as a matter of law, to completely annihilate the testimony of eyewitnesses who say the collision was on plaintiff's side of the pavement. The place of actual collision was clearly a question for the jury.

As to the broken glass at or near the scene, witnesses describe it as being on both sides of the pavement and it has no conclusive significance as an established physical fact. The deputy sheriff, in fact, says most of the glass was on the west side of the center line of the pavement. Two others, at least, saw it on the west side.

It is true there is not much if any variance in the testimony concerning the appearance and condition of the respective vehicles after the impact. But no definite light is thrown by such testimony on the exact place or manner of the collision—at least it falls far short of establishing a "physical fact" as to the side of the pavement where the vehicles collided, which an eyewitness could not be heard to contradict. Plaintiff's car had apparently been struck on its left side about opposite the driver's seat. It was not a head-on collision, but more like a sideswipe. Nor was there damage to the front end of the truck. The evidence indicated, according to the testimony of the deputy sheriff, that the left front corner of the van, which was wider than the cab, had struck or been struck by the left side of plaintiff's car. There was nothing to make impossible or improbable the testimony of eyewitnesses that the vehicles collided or sideswiped on plaintiff's side of the middle of the pavement. That was, under the record, a jury question.

The "physical fact rule" is well-established and sound. But it applies "only where the existence of such facts and their connection with the question at issue is established or admitted; and proof of such nature cannot be construed to establish a particular conclusion as a matter of law unless the facts and circumstances lead to but one conclusion to the exclusion of all others." 32 C. J. S., Evidence, section 1031, page 1074.

Discussion of the numerous cases in which this rule is discussed is unnecessary. Each case furnishes its own facts. We are clear those presented here did not require disregard of the testimony of the occupants of the Aleshire car or the direction of a verdict upon defendants' motion. See Clark v. Berry Seed Co., 225 Iowa 262, 268, 280 N.W. 505; Ross Produce Co. v. Thompson, 236 Iowa 863, 867, 20 N.W. 2d 57.

II. Defendant Fonken complains of the ruling which withdrew count 2 of his counterclaim from the consideration of

the jury. This count pleaded compromise and settlement. According to Fonken's testimony (and that of his employee, Lacina) the conversation with plaintiff upon which his claim of settlement is based occurred in April 1946 about six months after the collision and a week or two before commencement of this action by plaintiff.

Fonken and Lacina called on plaintiff at his home at or near Floris. It is contended from their testimony that plaintiff and Fonken at that time made a binding oral agreement by which plaintiff was to pay Fonken $1800 in settlement of the claim of the latter against plaintiff for damages to the truck and cargo in the collision. We have here to determine whether the testimony was such as to require submission of this count 2 to the jury.

It is to be observed this alleged settlement was not pleaded as an affirmative defense or answer to plaintiff's petition, although, if established, it would have been a complete bar to plaintiff's recovery. The answer was filed January 12, 1948, more than twenty months after the alleged settlement and after the commencement of plaintiff's action. The record does not show when the counterclaim was filed but the "amended and substituted counterclaims" (the plural evidently relating to the two counts) were filed April 6, 1948, the day after actual trial of the case commenced.

The motion of plaintiff for directed verdict against said count 2 is based on asserted lack of consideration; failure of consideration; inconsistency of count 2 with count 1; estoppel to assert count 2 because of insistence by defendant upon his count 1; and lack of evidence to support a claim of settlement, or rather undisputed evidence that there was no settlement; and it is urged if a verdict were to be returned against plaintiff on said count it would be the duty of the court to set it aside.

The legal situation created by the pleadings and procedure at this point is tangled and difficult. We have found no analogous case. The able and practiced trial judge, after pointing out that defendant was in court asking for the full amount of his damages (count 1), cut the Gordian Knot by the simple statement: "A man can't eat his cake and have it too. Motion sustained."

This assumes that a party may not join alternative causes of action. But our rules expressly permit such joinder. See Rules 22 and 31, Rules of Civil Procedure. The ruling also overlooks the fact that defendant did not commence the litigation but was haled into court in an action that ignored and in effect repudiated the alleged contract of settlement. Theoretically the jury could find for plaintiff on the testimony concerning the collision and still find he had lost his right of recovery against Fonken by an unwise settlement. (What would happen to his right of action against Gear in that case we need not speculate.)

The ruling we are discussing is however sustainable upon other ground. If the alleged compromise was entered into it rested entirely in parol and was executory on both sides. Neither party acted on it and the conduct of both tends to negative its existence. The two counts are not merely alternative but contradictory.

Plaintiff commenced his action in tort thirteen days after the compromise is claimed to have been entered into. Plaintiff's attorney wrote Fonken the day he filed the petition:

"Dr. Stevens told me of your request of him and that he was to advise you of the results of his investigation. * * * I think it only proper that I should advise you that the evidence shows the responsibility for the collision to be upon your driver and not upon Dr. Stevens. * * * I have filed an action * * * and the sheriff will serve notice upon you."

There was no reply to this letter. Twenty months later an answer was filed which made no mention of a compromise. The amended and substituted counterclaim first alleges the cause of action in tort for $3332.50 and then, presumably as an alternative, pleads the settlement and prays for judgment in the sum of $1800.

Did defendant Fonken, under his own testimony, accept plaintiff's executory agreement as a settlement, or did he agree to settle only upon payment of the alleged amount? In other words, was the alleged oral executory agreement substituted for whatever cause of action either party had against the other?

Fonken testifies he told plaintiff he had looked up the sheriff's report and that plaintiff was to blame; that his damage to

truck and contents was $2854.84 and that he asked plaintiff "if he had the money"; that plaintiff said no and he told plaintiff he would "take one thousand dollars off of the amount if he would raise the money" and that plaintiff said "he would raise the money, he had some property in Denver, and he would go out there and sell the property; and I asked him if he thought he could raise that amount, and he said, yes I can raise that amount, because the lots are very valuable and Denver is booming." Fonken further testifies plaintiff said it would not take him over two weeks and that "when he came back he would send the money"; and that he (Fonken) gave plaintiff his address on a piece of paper.

Lacina's testimony tends to corroborate Fonken though it is less definite:

"Mr. Fonken said he would take off one thousand dollars if Dr. Stevens would settle immediately, or presently, or in a short time. Dr. Stevens said he was going out to Denver to sell some property to raise the money, and would have the money within two weeks, and he would mail it to Mr. Fonken. Mr. Fonken agreed to do it. Q. What did he say? A. I don't recall the exact words."

Plaintiff's version of the conversation is quite different and flatly denies he made any commitment or agreement. He says he and his wife had already procured reservations to go to Denver on a visit, that he had a lot in a suburb of Denver which he had been trying to sell; that he told Mr. Fonken he would let him know in two weeks what he would do about a settlement. "I told him I wouldn't settle with him unless I was to blame. If I was to blame, I would consider settling with him. * * * I wanted to talk with Mr. Aleshire because he came to me in the hospital and told me he saw the accident." He also denies he said his Denver lot was valuable and says he told Fonken he had been offered $100 for it and says he actually sold it for $400.

We have given, as briefly as possible, the material part of the testimony bearing on the question of compromise. It must of course be considered in the light most favorable to defendant Fonken. Nevertheless the burden was on the latter to prove a

contract of settlement that either party could enforce against the other, either as a defense to action in tort on the original transaction or as the basis of an affirmative action in contract. "Unless rescinded, after a valid compromise agreement has been entered into, any subsequent remedy of the parties, with reference to the matters included therein, must be based on the agreement, it operating as a merger and a bar of all included claims and preexisting causes of action." 15 C. J. S., Compromise and Settlement, section 24, page 739, and sections 26, 27. See 11 Am. Jur., Compromise and Settlement, sections 23, 25.

We do not believe the record would have supported a verdict for defendant Fonken on count 2 of his counterclaim. Had it been submitted and a verdict thereon returned, it would have been the court's duty, upon proper motion, to have set it aside. The testimony at most shows negotiation of settlement but no such definite, binding agreement as to prevent either party from litigating the question of liability in tort. Only on this theory can be explained the subsequent conduct of the parties.

III. Defendants urge error because the trial court limited consideration of the deputy sheriff's accident report to the sole purpose of impeaching the officer's testimony. We find no error here of which they may avail themselves. Assuming the report to be governed by Code sections 321.266 and 321.271, neither party can complain of its admission since defendants offered it and plaintiff waived objection to it on that score.

We need not clear up the trial court's doubt as to whether the parties could so waive. The report was admitted and the court properly limited its consideration to the one purpose for which it could be admissible in absence of statute—impeachment of the witness who prepared it. The deputy sheriff testified fully and was cross-examined upon the report. We cannot hold it constituted independent evidence, available to either party, bearing on the facts of the collision.

IV. There was no prejudicial error in the trial court's refusal to withdraw from the jury the specification of alleged failure to maintain lookout. If the collision occurred on plaintiff's side of the pavement the presence of the truck on that side could have been due to Gear's failure to maintain proper lookout.

V. Nor do we find any prejudicial error in permitting

the witness Steinsmeyer to testify to the physical law or rule for computing force or kinetic energy, that is, the measurement of force generated by mass in motion. No attempt was made to prove anything by it and if its admission in evidence was erroneous, it was error without prejudice. The undoubted physical fact of the happening of the collision and its effect on the vehicles as revealed by their condition after it occurred was conclusive of everything this expert testimony could have tended to prove —that the combined force or energy of the two in motion was sufficient to cause the result. It could reveal nothing as to the respective speed of the vehicles or the negligence or care of the drivers.

The judgment of the trial court is affirmed.—Affirmed.

HAYS, C. J., and BLISS, HALE, WENNERSTRUM, MULRONEY, and MANTZ, JJ., concur.

OLIVER and GARFIELD, JJ., dissent from Division II.

OLIVER, J. (dissenting)—I think the proof was sufficient to require the submission to the jury of the question of the compromise and settlement pleaded by defendant. Therefore I dissent from Division II of the opinion.

GARFIELD, J., joins in this dissent.