WILLIAM C. GRADY, d/b/a GRADY CONSTRUCTION COMPANY, appellee, v. S. E. GUSTAFSON CONSTRUCTION COMPANY, IOWA STATE HIGHWAY COMMISSION and TRAVELERS INDEMNITY COMPANY, appellants.

No. 49970.

(Reported in 103 N.W.2d 737)

1244

JUNE 14, 1960.

REHEARING DENIED AUGUST 2, 1960.

Herrick & Langdon, of Des Moines, and Dillon S. Turney, of Fairfield, for appellants.

Kindig, Beebe & McCluhan, of Sioux City, and Don C. Swanson, of Des Moines, for appellee.

THORNTON, J.—At the outset it should be mentioned the trial and disposition of this case would have been facilitated by the use of pretrial procedure provided for in Division VI, rules 135 to 139, both inclusive, of the Rules of Civil Procedure.

Plaintiff, a subcontractor, brings this action in equity under the provisions of section 573.16, Code of Iowa, 1958, against the contractor, its surety and the Highway Commission. The contractor will be referred to herein as the sole defendant. Plaintiff's action is based on a claimed balance due under the terms of a written contract and a series of oral contracts between plaintiff and defendant for the performance of work and labor by plaintiff, a subcontractor, on the Interstate Highway project north of Des Moines. Defendant, the contractor, holds the prime

contract with the Highway Commission. Plaintiff filed his claim with the Highway Commission pursuant to chapter 573 of the Code in the sum of $52,359.42, and brought this action for $53,172.34 and for attorney fees under section 573.21. The trial court allowed plaintiff's claim in the sum of $15,488.42 and taxed an attorney fee of $1500. Defendant appeals and plaintiff cross-appeals.

There is no question raised as to performance of the work or that oral contracts were entered into. The parties agree defendant has paid plaintiff $198,530.69 for work performed on the project, and defendant admits in its pleading there is $8419.79 still due plaintiff.

I.  Defendant contends the action is premature and plaintiff is not entitled to his money until defendant receives the balance due it from the Highway Commission. The contract provides, 90% of all work will be paid when accomplished and within three days of receipt of estimates from the Highway Commission and is in part as follows: "* * * except the final payment, which said contractor shall pay to said subcontractor in full within three (3) days after final acceptance of the project and payment of the final estimate by the Iowa State Highway Commission."

Its contention is the payment of the final estimate by the Commission is a condition precedent to the maintenance of the action. If that is the law defendant can prevent recovery by plaintiff forever. The facts in this case demonstrate such condition is not in the control of plaintiff. Plaintiff filed his claim with the Commission and under the provisions of section 573.14, Code of Iowa, 1958, could hold up payment by the Commission to defendant of double the amount of the claim. It is not urged the Commission has not accepted the project. John T. Pearson, resident engineer of the Commission in charge of the project, called by defendant, testifies:

"We were holding funds due Gustafson Construction Company, but the filing of the claim by the Grady Construction Company has nothing to do with it. It was being held because of a claim Gustafson has against the Highway Commission which is separate from this case. * * *

"If we pay Mr. Gustafson this $111,000, it would mean that he would have accepted his final estimate and had no further claim against the Highway Commission, therefore, he has not signed the final estimate and will not."

██ ██ Defendant in no way offered to explain its failure to sign the final estimate. The evidence shows plaintiff completed his work for defendant September 4, 1958, filed his claim December 6, 1958, and this action January 12, 1959. Under the provisions of the written contract (and the dealings of the parties show the oral contracts were handled the same), defendant was to cross-section the areas from which plaintiff excavated to determine the cubic yards hauled by plaintiff, and under the dealings of the parties plaintiff was to furnish a load count for the basis of estimate by the Commission to make payment during the progress of the work. A proper interpretation of the contract and dealings of the parties requires each to do so in a reasonable time. In all events it is the intention of the parties here the final payment is an absolute debt of defendant. Provisions similar to the one here have been held valid and enforceable, but where the contractor has by his own fault lost the right to payment the subcontractor is entitled to his compensation. 17 C. J. S., Contracts, section 502(2)(d), page 1058. Here defendant has not lost his right to payment from the Commission, but because of other matters with the Commission is voluntarily delaying final payment. Under such circumstances plaintiff is entitled to his compensation, and a cause of action accrues in his favor within a reasonable time. As supporting this view see 12 Am. Jur., Contracts, section 329, page 885; section 381, pages 957, 958; sections 300, 301, pages 855–857; 17 C. J. S., Contracts, section 502(2)(d), page 1058; and McDermott v. Mahoney, 139 Iowa 292, 115 N.W. 32, 116 N.W. 788. Here plaintiff did not act with unreasonable haste under the circumstances, he was entitled to have the matter judicially determined on the date action was commenced.

██ II. The issue between the parties is, how many yards of earth did plaintiff excavate pursuant to the contracts? The question is purely one of fact, the burden is on plaintiff to prove the number of cubic yards hauled by a preponderance of the evidence. On this appeal we consider the case de novo and in

such cases we give weight to the findings of the trial court, but we do not abdicate our function as triers of fact. Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302; and Warren County v. Elmore, 250 Iowa 348, 93 N.W.2d 756.

To sustain his burden of proof by a preponderance of the evidence plaintiff must offer evidence in support of his claim, which when fully and fairly considered produces the stronger impression and be more convincing when weighed against the evidence introduced in opposition thereto. See Instruction No. 9, Uniform Jury Instructions Proposed by the Special Committee on Uniform Court Instructions of the Iowa State Bar Association.

The contract provides, "* * * Contractor will cross-section Channel and Borrow and pay subcontractor for actual cubic yards excavated." And plaintiff as a witness conceded the cubic yards excavated were to be determined by cross-sectioning. The contract places this duty on the contractor and requires him to pay plaintiff for actual cubic yards excavated. The contract does not exclude other methods of computation where the cross-sectioning has not been done, or is incomplete or inaccurate. Our duty is to determine from the evidence the actual yards excavated and plaintiff should be paid for such amount. John T. Pearson, the resident engineer, testifies cross-section quantities give the most accurate feasible answer and that the load count is quite inaccurate. Where the cross-sectioning has been accurately done we will use such to determine the yards excavated.

Plaintiff bases his proof on load count kept by him or his employees as the loads of dirt were excavated and hauled to the roadway to be filled. He does not have daily records for work performed prior to May 6, 1958. For work performed from December 9, 1957, to May 6, 1958, plaintiff relies on his lump sums of load counts as shown in his book Exhibit I, and Exhibits D-1 through D-12, letters from defendant to plaintiff enclosing a check in each instance for payment of work estimated to have been performed to a date specified in each exhibit. These estimates were made by the Highway Commission from a load count furnished by plaintiff.

III. Plaintiff contends defendant's cross-sectioning based on field notes of the Highway Commission, Exhibits 9, 10, 11 and 19, should be rejected because the field notes are inadmissible. The evidence fairly shows the field notes were prepared by employees of the Highway Commission as a part of the work on the project and such are kept by the Commission as a part of its records of the project and are open to the public. They are admissible as public records. Wigmore's Code of Evidence, Third Edition, rules 161, 162 and 163; and State v. Sonderleiter, 251 Iowa 106, 107, 99 N.W.2d 393, 394, and citations.

Cross-sectioning is a method of determining the amount of dirt to be excavated from the "cut", place from which the earth is removed, by taking the elevations of the land before and after the excavation. The results of the elevations, field notes, are plotted on graph paper and the amount excavated mathematically determined. The fill, the place where the earth is deposited, may also be cross-sectioned and the cubic yards of earth thus determined.

"Plans quantities" is the amount of earth determined by the Highway Commission to be necessary to complete the project and is determined similar to cross-sectioning. This method is often used by the Commission and prime contractor in arriving at the amount excavated as it is not necessary to complete the second elevations after the project is completed and speeds up the date of settlement.

IV. At the close of the trial there were seven areas of disagreement between the parties. We will deal with each separately, starting with the areas not cross-sectioned.

Relative to the finish work west of Merle Hay plaintiff testifies he performed the work at the instance of L. L. Nady, president of defendant corporation, his load count for the area is 967 loads and multiplied by 15 cubic yards per load equaled 14,505 cubic yards of finish work in this area. L. L. Nady testifies defendant settled with the Highway Commission for this work as "clearing and grubbing" of 9918 cubic yards. He states he believes plaintiff was a party to the negotiations with the Highway Commission. Mr. Pearson testifies to settling with

defendant for this finish work, he refers to it as channel back-fill, 9918 cubic yards, and does not mention plaintiff as a part of the negotiations. On this point we are forced to conclude defendant's president was mistaken. At the insistence of the trial court for Mr. Nady to produce a claim order showing the 9918 cubic yards, he produced a scratch copy showing the figure 9918 cubic yards under the title "clearing and grubbing" and he believes this is the same as the work west of Merle Hay. No explanation of the figure 9918 is given and no means of arriving at such figure is shown. The argument the load count should be rejected in the area because it is nearly 50% more than the amount allowed by the Highway Commission is not convincing. The load count of plaintiff is more convincing and the difference between 14,505 cubic yards and 9918, or 4587 cubic yards, should be added to the total excavated by plaintiff.

In another area not cross-sectioned, finish work between Twelfth Street and the Des Moines River Bridge, the trial court found the load count of plaintiff more convincing than the visual observations of defendant's president and we agree. Here Mr. L. L. Nady testifies to his observations and to what they allow amounts to 11,333 cubic yards of fill required. This testimony amounts to nothing more than an estimate. When he testifies, "we figure" and "we allowed" there is a showing of no measurement of any type sufficient to overcome the load count of plaintiff and we are not convinced the difference between the figures demonstrates the unreliability of the load count.

In Borrow C the trial court adopted the load count of plaintiff in the amount of 155,895 cubic yards and we agree with this result. The trial court points out that Exhibit 7 was not a complete cross-section of Borrow C and there are no field notes in evidence from which to compile a final cross-section. Also it points out there are certain stations shown on Exhibit 7 in which the preliminary and final graph lines do not meet, resulting in an indefinite and arbitrary cut-off point being assumed. An examination of the testimony and exhibits shows these statements to be justified. Defendant in his brief urges the few places on Exhibit 7 where the graph lines do not meet is relatively negligible.

V. The next area in dispute is Beaver Creek Channel. In this area plaintiff first claimed he hauled 100,000 cubic yards, during the trial in rebuttal testimony he changed his claim in this area to 89,850 cubic yards. His load count is 5990. Defendant had the area cross-sectioned by Robert M. Nady, an engineering professor at Iowa State University, who also operates his own engineering consulting firm. The cross-section figures show plaintiff excavated 46,792 cubic yards. In determining this area the trial court relied on the plans quantities of the Highway Commission of 66,857 cubic yards between stations 809 and 825 and deducted therefrom 1291 for work performed between such stations by defendant.

Plaintiff worked from station 803 to 825 in Beaver Creek. The stations are 100 feet apart. The length 2200 feet east and west and the bottom of the channel 40 feet wide. The record shows eight hours work, with three by plaintiff around station 803. He then moved to 825 and worked back toward 803. Plaintiff's principal work in this channel was between 809 and 825. Defendant worked between 809-825 on two different days as shown by the Highway Commission log, Exhibit 17. On November 9, 1958, defendant hauled from station 811+ –832+ with six rigs for a ten-hour day. How much he hauled from 825-832 on that date we cannot determine from the evidence. On November 9 defendant hauled from stations 810-816 and, if we read the diary right, with six units. Neither side has offered evidence from which we can determine accurately the amount of work performed by defendant in the affected area by reference to Exhibit 17, the Commission diary. Defendant has offered evidence by its engineer of the amount of work performed in the area before plaintiff started by cross-sectioning. The engineer says in part, "* * * We can get an approximation of how much dirt was removed from this location by comparing the two sections." He approximates 3285 cubic yards in the area of 809 to 816 and makes an estimate of 6660 cubic yards between 816 and 825. This type of testimony, together with one error discovered by the witness on the stand, which after a recess he explained was uniform and did not change the amount of earth excavated, is typical of defendant's evidence in this area. The trial court

was justified in disregarding it. Likewise with plaintiff's load count. His claim of 89,850 cubic yards is so out of proportion to the plans quantities of the Commission as to justify disregarding it. However, the evidence is clear plaintiff performed substantial work in this area and we are convinced the plans quantities more accurately show the amount of this work than either of the methods offered by the parties. We therefore adopt the findings of the trial court in this area.

VI. In Meredith Borrow plaintiff's load count for the time worked is apparently out of proportion. The evidence affirmatively shows plaintiff worked a total of 29 hours with two scrapers. Under the existing hauling conditions the trial court determined each scraper moved a maximum of 60 cubic yards per hour, or 120 cubic yards per hour for both for the 29-hour period, or a total of 3480 cubic yards. By cross-sectioning, defendant's witnesses determined the amount of earth moved to be 3394 cubic yards in this area. The trial court found the amount of earth moved by plaintiff in this area to be 3394 cubic yards, the amount shown by cross-sectioning. An examination of all the evidence relative to Meredith Borrow convinces us this finding is correct.

VII. The trial court found the cross-sectioning in Borrows B and F to be full and complete and more credible than plaintiff's load count. We agree.

In determining the amount of earth excavated by plaintiff we have kept in mind the contract required defendant to cross-section and pay plaintiff for the actual amount excavated. Where the cross-sectioning has been based on field notes in evidence and appears complete and accurate it has been adopted. We have also been influenced by the fact field notes of the Highway Commission have at all times been available to both parties. Plaintiff if he had so desired could have used these to do his own cross-sectioning. It should also be pointed out plaintiff has not pointed out the incorrectness of any of the cross-sections by testimony of an engineer. Where as above pointed out the cross-sectioning was incomplete or in some instances the result of estimates and where no cross-sections were or could be taken we have adopted plaintiff's load count.

The following excerpt from the testimony of defendant's president also indicates a weakness in its contentions relative to cross-sectioning. In discussing a final estimate he said:

"I can't say that it was based on these exact figures, because, I think, as I mentioned the other day, that it is very difficult to make out a final estimate until we get a final estimate from the State Highway Commission. These quantities sometimes are not exactly the same as what we think they are going to be when we get the final estimate. In other words, that is one reason why we never furnish a final estimate, and we don't like to try to furnish a proposed final estimate exactly before we get our final estimate from the State Highway Commission."

He qualified this some by saying he was talking about total of such items as extras and things of that nature. However, it seems to us, if the computations had been made on cross-sectioning at least that amount would be final and complete before the trial of this action.

Further to point out the difficulty here, plaintiff had unquestionably received credit for work not accomplished because his equipment had been figured at an 18-cubic-yard capacity instead of 15-cubic-yard capacity. However, this error does not appear to be plaintiff's fault. During the progress of the work the actual number of loads hauled does not appear to have been disputed, just the quantity hauled.

■ VIII. Defendant contends the equities of the case are such the trial court should not have exercised the discretion vested in it to tax a reasonable attorney fee in favor of a claimant for labor or materials who has in whole or in part established his claim. The court taxed an attorney fee in the sum of $1500. The time spent by plaintiff's counsel as submitted to the trial court was five full days in the actual trial of the case by two attorneys plus 49 hours for one and 43 hours for two attorneys outside of court. This amount cannot be said to be unreasonable to be taxed against the defendant and is within the sound legal discretion of the trial court, where as here the claimant has established his claim in part. Section 573.21, Code of Iowa, 1958; and Petit v. Ervin Clark Constr. Inc., 243 Iowa 118, 49 N.W.2d 508.

IX. Our holding here modifies the decree of the trial court on plaintiff's cross-appeal by allowing plaintiff an additional sum of $724.75 for the 4587 cubic yards hauled on the Merle Hay finish work @ 15.8¢, less the amount of plaintiff's share of the bond. In all other respects the decree of the trial court is affirmed. The case is remanded for the trial court to determine the amount of the additional share of the bond required of plaintiff and to enter a decree in conformity herewith. Costs taxed to defendant S. E. Gustafson Construction Company.— Affirmed on defendants' appeal; modified on plaintiff's cross-appeal and remanded.

All JUSTICES concur.

OLIVER, J., not sitting.