CHARLES E. CHRISTENSEN and MARK A. CHRISTENSEN, doing
business under the firm and style name of CHRISTIE BROS.
EXCAVATING, appellees, v. IOWA STATE HIGHWAY COM-
MISSION et al.; ARDELL M. SMITH Co. (appellant),
et al., defendants.

No. 50324.

(Reported in 110 N.W.2d 573)

1352

Smith, Peterson, Beckman & Willson, of Council Bluffs, and Prichard & Prichard, of Onawa, for appellant Ardell M. Smith Co.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, and Margolin & Goldblatt, of Sioux City, for appellees.

Garfield, C. J.—This case well illustrates the wisdom of reducing agreements to writing and the trouble and expense that may result from not doing so.

The appeal presents mainly fact questions.

Schroeder and Van Buskirk were principal contractors to construct part of Interstate Highway 29 in Harrison and Pottawattamie Counties. They subcontracted in writing to Smith part of the earth moving and grading. He was to be paid "59¢ per cubic yard of dirt moved to grade * * * to be measured by embankment quantities * * *. Final quantities * * * to be determined by said State Highway Commission."

On September 20, 1957, the time for Smith to perform his subcontract had expired and the work was not completed. He then orally engaged plaintiffs Charles and Mark Christensen, doing business as Christie Brothers, to haul dirt in trucks to bring at least part of the new road to grade. Plaintiffs offered to move this dirt for 45¢ per cubic yard but Smith agreed to pay 50¢. Plaintiffs claim the 50¢ was to be paid for each cubic yard of dirt hauled. Smith, however, contends plaintiffs were to be paid 50¢ per cubic yard of embankment quantities in

place, just as he was to be paid at the rate of 59¢ per cubic yard for such quantities. This is the main dispute between the parties.

It is agreed there is a good deal of shrinkage in loose dirt hauled in a truck after it has been deposited on a road grade and becomes more compact. Mark Christensen estimates 25% as the amount of such shrinkage on this job. Other estimates are higher. Thus the principal controversy is whether plaintiffs are to be paid for the quantity of dirt hauled without deduction for this shrinkage.

The trial court upheld plaintiffs' version of the method of computing the quantity for which Smith was to pay 50¢ per cubic yard and found plaintiffs hauled a total of 35,508 yards, the quantity claimed by them. After crediting Smith with $10,300 which he admittedly paid plaintiffs and $333, part of what he paid an attorney for some of the truckers plaintiffs employed on the project, judgment of $7121 was entered for plaintiffs against Smith, together with costs, including attorney fees of $500. (See section 573.21, Code, 1958; Grady v. S. E. Gustafson Constr. Co., 251 Iowa 1242, 1252, 103 N.W.2d 737, 743.) Smith has appealed and may be treated as sole defendant.

I. We will first mention some familiar legal propositions. Although we give weight to the trial court's findings we cannot avoid our duty to review the case de novo. Rule 334, Rules of Civil Procedure; Grady v. S. E. Gustafson Constr. Co., supra, 251 Iowa 1242, 1246, 1247, 103 N.W.2d 737, 739, and citations.

Of course plaintiffs had the burden to prove their claim by a preponderance of the evidence. To sustain this burden the evidence to support the claim, when fully and fairly considered, must produce the stronger impression and be more convincing when weighed against the evidence in opposition thereto. Grady case, supra.

Since plaintiffs pleaded an express oral contract they cannot recover upon an implied contract or upon quantum meruit. In re Trust of Spilka, 250 Iowa 1021, 1027, 97 N.W.2d 625, 628, and citations.

II. We refer now to the evidence. The oral agreement

under which plaintiffs were employed was between Smith and Charles Christensen in the presence of John R. Boyd, a cousin of Smith employed by him to care for his equipment. Charles testifies, "Smith was to pay 50¢ a cubic yard for the hauling and depositing. I had no discussion or agreement with Smith that the cubic yardage of dirt would be measured by embankment quantities in place." Over objection as incompetent, irrelevant and immaterial, he says plaintiffs have never been paid that way on similar projects. On cross-examination Charles testifies no conversation was had with Smith at the time the contract was made in regard to the method of measuring the dirt to be hauled.

Mark Christensen had charge of the work for plaintiffs. This is his testimony:

"I visited with Mr. Smith about the time we started work and mention was made that we were to be paid 50¢ a cubic yard for the dirt we were hauling.

"Q. And that of course was a cubic yard of dirt hauled and not spread or compacted? [Defendant's counsel: Objected to as leading and suggestive.]

"A. That was without compaction or anything of that nature, just hauled."

It is clear the last question is objectionable on the ground stated and the answer may not be considered. Further, the testimony is in the nature of a conclusion and does not purport to relate what either party said. Nor does the witness say whether he or Smith made mention "that we were to be paid * * * for the dirt we were hauling." On cross-examination this witness testifies, "To my understanding I was not to furnish compacted dirt. I was to furnish loose dirt, fill clay."

The above includes all the direct evidence for plaintiffs. Defendant (Smith) says, "I told him [Charles Christensen] I was prepared to pay 50¢ a yard for that dirt, that I was being paid according to my subcontract measured in place, embankment measure, and he would have to be paid as I was. * * * The price was to be determined by measuring the dirt on the fill after it was completed."

Defendant's employee, Boyd, testifies, "Mr. Smith said the measurement was being made by embankment in place on the fill area and Christensen would get paid in the same manner as Smith got paid." On cross-examination this witness first emphatically denies, but later admits, he signed a statement typed by Mark Christensen on January 20, 1958, about two months after plaintiffs did their last work on the project. The statement, exhibit 18, says that at the time of the verbal agreement between plaintiffs and defendant "nothing was said about Christie Bros. being paid on a compacted cubic yardage figure."

This written statement, inconsistent with Boyd's previous testimony, was admissible to discredit or impeach the witness but not as substantive evidence of the facts related in the statement. Law v. Hemmingsen, 249 Iowa 820, 835, 89 N.W.2d 386, 397, and citations; Stevens v. Gear, 240 Iowa 1348, 1357, 39 N.W.2d 408, 414; State v. Powell, 237 Iowa 1227, 1245, 1246, 24 N.W.2d 769, 780; Annotation, 133 A. L. R. 1454, 1455.

The trial court's findings of fact, filed nine months after the trial, recite:

"The only competent disinterested evidence on this question [whether plaintiffs should be paid for dirt hauled or 'embankment quantities in place'] is exhibit 18 * * *. This corroborates plaintiffs' position and it is the court's opinion they have proved their allegations concerning the terms of the verbal contract."

As just stated, the exhibit should be considered only for the purpose of discrediting or impeaching the witness Boyd.

William H. Belt, a trucker employed by plaintiffs on the job, testifies Mark Christensen "was telling me he hauled the dirt down on the job, compact dirt; I suppose that would be out on the road." Mark Christensen does not deny this testimony. Belt and other truckers had sued plaintiffs for money due them on the job. This witness had been convicted of grand larceny more than 15 years before the trial.

We have referred to substantially all the direct evidence for defendant as to the disputed terms of the oral agreement. However, there is other evidence that bears upon the question.

Plaintiffs kept track of the loads hauled by employing

Francis Coyle, a railroad-crossing flagman, to count the loads. After obtaining and making a record of Coyle's count each day plaintiffs estimated that six yards were hauled on each load except on "tandem trucks" which they estimated at 12 yards. In this way plaintiffs obtained their claimed total of 35,508 yards. Although there is some dispute on the point, we are satisfied defendant made no effort to keep track of the number of loads or the quantity of loose dirt hauled by plaintiffs' truckers on the project. (They worked from September 24 to November 16, 1957, on a stretch of the highway about 6000 feet long.)

Defendant's method of computing "embankment quantities in place" was to bore holes at intervals on the grade, measure their depth and compute the yardage from the measurements. There is quite a little evidence that plaintiffs took part in, or witnessed, along with defendant or his employees, boring and measuring of holes on this grade after plaintiffs did their last hauling. After considerable discussion the parties were unable to agree on the quantity of dirt, computed by this method, that plaintiffs hauled onto the embankment and was there in place.

Ira R. Van Buskirk, one of the principal contractors, testifies to a meeting between plaintiffs and defendant after the hauling was done. Defendant then first contended plaintiffs hauled around 20,000 yards and plaintiffs claimed a total of over 26,000. This last figure is a little more than 25% less than the total yardage they now claim. Over objection as incompetent, irrelevant and immaterial Van Buskirk says in his 26 years of dirt moving there was never called to his attention such a contract which provided for payment for dirt hauled as loose dirt.

Defendant was paid by the principal contractors for 24,000 yards of dirt moved to grade by plaintiffs. What, if any, quantity was in fact determined by the State Highway Commission does not appear. (We do not overlook the stipulation as to what Campbell would testify, if called.)

The fact plaintiffs took part in the measurements and computations and discussed settlement on the basis of quanti-

ties in place lends support to defendant's version of the agreement. If plaintiffs were to be paid on the basis of loose dirt hauled they would naturally have little, if any, interest in the quantities in place on the embankment. This evidence tends to show the practical construction plaintiffs by their conduct placed upon the agreement. Such a construction will usually be adopted by the courts. Gilbrech v. Kloberdanz, 252 Iowa 509, 513, 107 N.W.2d 574, 576, 577, and citations.

There is some other evidence tending to show plaintiffs were not to be paid for the shrinkage in hauling the dirt. Mark Christensen testifies, "The trucks were all heaped to compensate for any possible shrinkage."

It would seem somewhat unusual if defendant agreed to pay plaintiffs on a basis entirely different from the one on which the principal contractors were to pay him, even though the time limit on performance by defendant had expired and he was to be paid 59¢ a cubic yard. He was still required to spread, roll, water and blade the dirt plaintiffs placed on the grade. So defendant did not have a profit of nine cents a yard in the job.

■ After giving weight to the trial court's findings we are not satisfied a preponderance of the evidence shows plaintiffs were to be paid 50¢ a yard for the loose dirt hauled by them. The competent testimony in their behalf is merely to the effect they were to be paid 50¢ a yard and nothing was said as to the manner of computing the yardage. Defendant's direct evidence conflicts with this and finds more corroboration in the conduct of the parties than does plaintiffs' version.

III. We conclude plaintiffs are entitled to be paid for a total of 26,000 yards. It must be admitted this is an approximation which exceeds the quantity shown by defendant's computations and for which he settled with the principal contractors. It is virtually impossible to determine precisely from the measurements taken the quantity of dirt plaintiffs added to the embankment and there in place. This is partly because the embankment surface was very uneven when plaintiffs began work although defendant admits he represented to them it was

then at grade and only required a covering of six inches. Then too the holes were not closer than 200 feet apart (every second station) along the grade. The quantity we determine is 631 yards less than the total yardage claimed by plaintiffs after deducting shrinkage of 25%.

IV. One other matter should be mentioned. We have said some of the truckers plaintiffs employed sued them for money due on the job. After a conference among the truckers, their attorney, defendant and plaintiffs, defendant paid the attorney $471.50 for the truckers. Plaintiffs testify they agreed only $333 could be paid and charged to them. The trial court allowed defendant a credit in this last amount. We think he is entitled to a credit of $471.50. Plaintiffs do not say they were not owing the sum paid and the attorney, disinterested so far as shown, testifies it was not greater than they offered to pay in settlement of the truckers' claims.

V. According to our determination the total sum plaintiffs earned is $13,000. Against this defendant is entitled to credits of $10,300, admittedly paid by him, and $471.50, as explained in Division IV, or $10,771.50 in all. This leaves a balance in plaintiffs' favor of $2228.50. It is conceded $616 of this amount is to be paid Hooker Brothers Agricultural Lime Company which holds a judgment against plaintiffs for the last named sum for use of trucks on this job. The net amount to be paid plaintiffs is therefore $1612.50 with interest at five per cent from November 16, 1957.

Except as modified in these respects the trial court's judgment is affirmed. The cause is remanded for the entry of a judgment so modified upon request of any party to the action. Two thirds the costs in this court are taxed to plaintiffs, one third to defendant Smith.—Modified, affirmed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.