Fred BOAZ, Boaz Well Service, Inc.,
Plaintiffs,

v.

R. L. SAMPSON, Beam Industries, Inc.,
Defendants.

Civ. No. 63-C-2025-C.

United States District Court
N. D. Iowa,
Central Division.
April 28, 1965.

---

E. B. Carpenter, Paul Ahlers, James E. Cooney and Kenneth Haynie, Des Moines, Iowa, for plaintiffs.

Alan Loth, Fort Dodge, Iowa, Lloyd Karr and Margaret Karr, Webster City, Iowa, for defendants.

HANSON, District Judge.

This is an action on an oral contract.

Beam Industries, Inc. was formed a few years prior to 1960 as a small manufacturing company. The stock was at least largely held by persons residing in Webster City, Iowa. R. L. Sampson was an officer of Beam Industries, Inc.

In 1960, Manor-Vac, Inc. of California was formed. The stockholders included James Canaris, Herbert Aldrich, Irving Loube, and Fred Boaz. Total capital stock paid in was $1,000.00. The corporation secured a loan from Boaz Well Service, Inc. of $50,000.00.

Manor-Vac, Inc. of California received a sales distributing contract from Beam which made said Manor-Vac, Inc. the exclusive national distributor of built-in vacuum cleaners produced by Beam.

Beam and Boaz made an agreement whereby they guaranteed the debts of Manor-Vac, Inc. to third parties. Boaz was first guarantor and Beam second guarantor.

Boaz made additional "loans" to Manor-Vac, Inc. of $2,000.00 in September of 1960 and $5,000.00 each in August and October of 1960.

Because of poor management and a failure to put Manor-Vac, Inc. of California on a self sustaining financial basis, its funds, including those borrowed from Boaz and Boaz Well Service, Inc., rapidly became depleted.

A meeting was held in the early winter of 1960 in Fort Worth, Texas. Boaz, Sampson and Canaris were present. What happened at the meeting is disputed.

By winter of 1960, Manor-Vac, Inc. of California had accrued a number of debts including one of $14,000.00 to Beam. The tangible assets of Manor-Vac included equipment worth approximately $1,000.00 and $17,930.30 in accounts receivable.

In the early months of 1961, Beam purchased from Manor-Vac, Inc. its assets together with the above referred to accounts receivable. Payment was made by off-setting the $14,000.00 debt which Manor-Vac owed Beam and by giving Boaz a check for $7,119.86. Beam also paid some liens against Manor-Vac equipment.

Boaz used the $7,119.86 to purchase $6,000.00 worth of Beam stock. The remaining amount was used to pay Manor-Vac, Inc. creditors.

On December 6, 1960, Boaz and Beam both revoked their guarantees of Manor-Vac, Inc. debts although up to that time they had already guaranteed a number of debts for which they remained potentially liable.

On January 16, 1961, Boaz put another $15,000.00 into the business. This was used to pay off Manor-Vac, Inc. creditors.

The contentions of the defendants are.

1. That Boaz was to be reimbursed only to the extent that he earned it by promoting the sales of the vacuum cleaners.

2. That Beam had only agreed to use the otherwise profits of Beam to pay off the creditors of Manor-Vac who had not otherwise been paid off by Boaz and Beam prior to the time the business was moved to Webster City, Iowa in the late spring of 1961.

3. That little or no consideration passed to Beam in that the $15,000.00 furnished by Boaz in December 1960 was used to pay off creditors to whom Boaz himself was primarily liable to under the guarantee. These creditors could have otherwise levied on Boaz property. Beam made no gain out of its purchase of the equipment and accounts receivable of Manor-Vac, Inc. of California.

4. While the defendants do not concede that there was any bargained for consideration, they do also contend that anything received in the way of use of the good will or trade name of Manor-Vac, Inc. would not be consideration for the $80,000.00 debt.

The contentions of the plaintiffs are:

1. That Beam would use the profits from the sales of the vacuum cleaners to pay the debts of Manor-Vac and use the profits to reimburse Boaz and Boaz Well Service, Inc. for the amounts of money that they had put into the business.

2. That the $15,000.00 given by Boaz in December of 1960 would be considered a loan to Beam to be repaid out of the profit of selling vacuum cleaners.

3. That the consideration for this was that Beam could use the good will and trade name and sales tools of Manor-Vac and that Beam would be relieved of its liability on the guarantee and that preventing the collapse of the vacuum cleaner sales would prevent the collapse of Beam who primarily, at least at that time, produced only the vacuum cleaners.

The parties do not disagree on what the law is as it applies to this kind of a case. The defendants cite cases which state that the terms of the contract must be definite and certain. 17 Am.Jur.2d 368; Bremhorst v. Phillips Coal Co., 202 Iowa 1251, 211 N.W. 898; Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302.

■ The plaintiffs claim that the parties have placed a practical construction on their contract. Harvey Construction Co. v. Parmele, 253 Iowa 731, 113 N.W.2d 760; Christensen v. Iowa State Highway Commission, 252 Iowa 1351, 110 N.W.2d 573; Darnall v. Day, 240 Iowa 665, 37 N.W.2d 277; Martin v. A. W. Moeller & Son, 241 Iowa 1033, 44 N.W.2d 345. These cases are cited for the proposition that although the terms are so indefinite and vague as to be incapable of construction, the practical interpretation put upon it by the parties by their subsequent conduct may remedy this defect. While that is the law, it does not fit the facts of this case. There was clearly no action by the defendants showing that they ever intended to pay the plaintiffs the more than $60,000.00 which the plaintiffs put into Manor-Vac prior to 1961. It seems rather to be clear that the intention of the defendants was to use profits from the production of vacuum cleaners to pay off the debts which both Boaz and Beam had guaranteed only if Boaz would help by promoting the sale of the product. Such an arrangement was made and carried out.

There is very little to indicate that Boaz was to be repaid the $15,000.00 that he used to pay these guaranteed debts in January 1961. Certainly there is insufficient evidence to convince this court that this sum was to be repaid to him after he quit promoting the sale of the product. In other words, if such an agreement did exist, Boaz breached it himself. No consideration has been proven which convinces the court that any agreement was made that Boaz was to be paid the sums claimed if Boaz did not promote the product and earn the sums as sales commissions.

Accordingly, the court must conclude that neither Beam or Sampson are liable in any amount to Fred Boaz or Boaz Well Service, Inc.

■ The defendants have not proven the allegations of their counterclaim and, accordingly, the counterclaim must be denied and dismissed.

The defendants have not proven that Boaz assured Beam that he would furnish cash to pay Manor-Vac creditors as necessary to meet the creditors' demands. The defendants have not proven that Boaz agreed to furnish Beam funds to pay creditors in the event Manor-Vac's

accounts receivable were not sufficient to do so.

The evidence rather tends to show that Beam, in addition to purchasing the equipment and accounts receivable from Manor-Vac, decided to secure their position by voluntarily paying certain creditors the more than $4,200.00 which is the subject of the counterclaim.

There is no substantial showing that the sum in controversy was paid by reason of any agreement with Boaz or paid by reason of reliance on anything Boaz ever did or said.

As to the claim of the plaintiffs and the counterclaim of the defendants, it is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.