**In the Matter of the WELFARE OF J.S.J., Child.**

No. CX–95–1791.

Court of Appeals of Minnesota.

June 11, 1996.

John M. Stuart, State Public Defender, Charlann E. Winking, Assistant State Public Defender, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Joseph A. Evans, Becker County Attorney, Michael D. Fritz, Assistant County Attorney, Detroit Lakes, for Respondent.

Considered and decided by KALITOWSKI, P.J., TOUSSAINT, C.J., and HOLTAN, J.*

**OPINION**

KALITOWSKI, Presiding Judge.

Appellant J.S.J. challenges his adult certification arguing the district court abused its discretion by: (1) denying a motion for an extension of time; and (2) concluding J.S.J. did not rebut the presumption in favor of certification.

**FACTS**

On June 11, 1995, J.S.J., a 16–year–old resident at Spring Hill Group Home, struck a counselor over the head with a wooden dowel. At the direction of J.S.J., he and two other juveniles stole Spring Hill's van, taking three counselors as hostages at knifepoint. After the juveniles stole cigarettes from a store, an off-duty police officer stopped the van. J.S.J. and another juvenile chased the officer on foot and attempted to stab him. The hostages escaped and the juveniles fled in the officer's truck. Police later apprehended the juveniles.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Becker County filed a delinquency petition against J.S.J. alleging nine felony counts, including second-degree assault, kidnapping, robbery, and theft. The prosecutor moved for adult certification. The district court subsequently granted J.S.J.'s motion for a psychological evaluation. On the day before the certification hearing, J.S.J.'s counsel moved for an extension of time. Because the evaluation prepared by the court-appointed psychologist was not favorable, J.S.J.'s counsel argued that more time was needed to conduct an additional psychological evaluation. The court denied the motion and the certification hearing proceeded.

Three victims testified for the state. J.S.J. presented the testimony of the evaluating psychologist, his probation officer, and his parents. Both the psychologist and the probation officer presented testimony damaging to J.S.J. In his evaluation and testimony, the psychologist concluded J.S.J. was a "mild to moderate safety risk" to the public. He testified J.S.J. has a tendency to react irrationally and with anger when confronted with stress. He also noted that because J.S.J. reacted negatively to school and to psychological treatment, J.S.J. might not be receptive to therapy. Similarly, the probation officer stated:

> I believe that the juvenile system is not equipped to even begin to work with (J.S.J.) and that perhaps the adult system would better suffice.

The probation officer believed J.S.J. had anger problems and lacked the motivation to benefit from treatment. Based on testimony, the psychological evaluation, J.S.J.'s delinquency records, and the certification report, the court concluded J.S.J. failed to rebut the presumption in favor of certification and accordingly certified him to stand trial as an adult.

### ISSUES

1. Did the district court abuse its discretion in concluding no good cause existed to grant an extension of time?

2. Did the district court abuse its discretion in concluding J.S.J. did not rebut the presumption in favor of certification by clear and convincing evidence?

### ANALYSIS

### I.

A district court has the discretion to grant a continuance in a juvenile proceeding. *In re Welfare of T.D.F.,* 258 N.W.2d 774, 775 (Minn.1977). A court's ruling regarding a continuance will not be reversed absent a clear abuse of discretion. *Dunshee v. Douglas,* 255 N.W.2d 42, 45 (Minn.1977). Under the juvenile rules

> [t]he certification hearing shall be held within thirty (30) days of the filing of the certification motion. Only if good cause is shown by the prosecuting attorney or the child may the court extend the time for a hearing for another sixty (60) days.

Minn.R.Juv.P. 32.04, subd. 1(B). In the event a psychological evaluation is ordered, counsel for a juvenile shall receive a copy of the evaluation 48 hours before the hearing. Minn.R.Juv.P. 32.03, subd. 3. The district court may, in its discretion, order additional psychological examinations. *In re Welfare of S.R.J. v. State,* 293 N.W.2d 32, 36 (Minn. 1980).

J.S.J. contends his trial counsel was not given sufficient time to review the psychological evaluation with him. The evaluation, however, was provided more than 96 hours before the hearing. Because the juvenile rule requires that the evaluation be provided to counsel 48 hours before the hearing, we must assume that 48 hours is deemed a sufficient period of time to review the evaluation. Additionally, we note that the district court, after denying the motion for an extension of time, did grant a recess to allow J.S.J.'s counsel an opportunity to consult with J.S.J. and go over the evaluation.

J.S.J.'s extension request to the district court was premised on the need for an additional psychological evaluation. While a court may order a psychological evaluation when appropriate, a juvenile has no right to a favorable evaluation. Additionally, the law does not provide that a juvenile has a right to a second evaluation should the first evaluation prove unfavorable. We thus conclude that the district court did not abuse its dis-

cretion in determining that J.S.J.'s desire for an additional psychological evaluation did not constitute good cause for an extension of time.

J.S.J. cites *T.D.F.*, a case under the old reference law, in which the supreme court determined the district court abused its discretion in denying a continuance. *See* 258 N.W.2d at 775. We find *T.D.F.* to be distinguishable. T.D.F.'s original counsel was out of town when, on the afternoon before the hearing, one of T.D.F.'s colleagues learned of the hearing. 258 N.W.2d at 775. As a result, T.D.F.'s substituted counsel knew almost nothing about the case and sought a continuance. *Id.* The district court denied the continuance and the hearing proceeded. *Id.* The substituted counsel called no witnesses. *Id.* The supreme court reasoned that denying the requested continuance resulted in ineffective assistance of counsel for T.D.F. *Id.*

■ Here, the denial of J.S.J.'s motion did not result in ineffective assistance of counsel. J.S.J.'s counsel, who knew about the hearing a month in advance, prepared and presented a case that included calling several witnesses. Because J.S.J. did not establish good cause for an extension of time, the district court did not abuse its discretion in denying J.S.J.'s motion.

## II.

■ A court has considerable latitude in determining if certification for adult prosecution will be made, and its decision will not be reversed absent clearly erroneous findings constituting an abuse of discretion. *In re Welfare of S.W.N.*, 541 N.W.2d 14, 16 (Minn. App.1995), *review denied* (Minn. Feb. 9, 1996). Where a child is 16 or 17 years old at the time of the offense, the petition alleges an offense that would result in a presumptive executed adult criminal sentence, it is rebuttably presumed that the child will be certified for trial as an adult. Minn.Stat. § 260.125, subd. 2a (1994). Specifically, upon a court's determination of probable cause

> the burden is on the child to rebut this presumption by demonstrating by clear and convincing evidence that retaining the

proceeding in the juvenile court serves public safety.

*Id.* (emphasis added); *see also In re Welfare of L.J.S.*, 539 N.W.2d 408, 412–13 (Minn.App. 1995) (upholding the constitutionality of the presumption in favor of certification), *review denied* (Minn. Jan. 25, 1996). In determining whether public safety is served by certifying a child, a court considers six statutory factors. Minn.Stat. § 260.125, subd. 2b.

■ J.S.J. does not challenge the facts or that the presumption applies. *See S.W.N*, 541 N.W.2d at 16 (for the purposes of a certification hearing, the facts against the juvenile are taken as true). Thus, J.S.J. had the burden of proving his retention in the juvenile system serves public safety.

Initially, we note J.S.J. argues that the district court improperly relied almost solely on the seriousness of the crime. We disagree. The court properly considered and made findings concerning all six of the statutory factors.

The first factor, the seriousness of the crime and its impact on victims, is by law given greater weight. Minn.Stat. § 260.125, subd. 2b. This factor weighs heavily in favor of certification. The nine charged felony offenses include counts for kidnapping, assault, robbery, and theft. Three victims testified as to the profound effect J.S.J.'s crimes have had on their lives. Further, the court correctly noted an aggravating factor that J.S.J. acted as part of a group of three perpetrators. *See* Minn. Sent. Guidelines II.D.2.b.(8).

The second factor involves a determination as to the culpability of the child. Minn.Stat. § 260.125, subd. 2b. The evidence supports the district court's finding that because J.S.J. took charge and gave commands, he was the most culpable of the juveniles.

The third factor, the child's record of delinquency, is also given greater weight. *Id.* As the court noted, J.S.J.'s prior offenses demonstrate a significant disregard for people and property. His delinquency record includes second-degree assault for brandishing a knife at school, second-degree burglary of a bar, theft from a church, and possession of alcohol and a concealed weapon.

The fourth factor involves a review of the child's programming history and willingness to participate in programming. *Id.* J.S.J. did not advance past "Level 1" on Spring Hill's point system of therapy, did not complete a one-on-one counseling session, exhibited total unwillingness to participate in counseling, and was failing the Spring Hill program. While J.S.J. has had little counseling, the testimony indicates he might lack the motivation to benefit from treatment.

The fifth factor concerns the adequacy of punishment or programming in the juvenile system. *Id.* While J.S.J. contends an Extended Juvenile Jurisdiction (EJJ) disposition would provide adequate punishment and treatment, the testimony at the hearing supports the conclusion that the juvenile system is not equipped to work with J.S.J.

■ The sixth factor considers available dispositional options. *Id.* J.S.J. argues the district court failed to consider EJJ. A court, however, need not specifically address EJJ in its certification order unless the child rebuts the presumption in favor of certification. *In re Welfare of K.M.*, 544 N.W.2d 781, 785 (Minn.App.1996). Here, J.S.J. did not rebut the presumption, and the court properly addressed the statutory factors with findings that are supported by the record. Accordingly, we conclude the district court did not abuse its discretion in ordering certification of J.S.J.

## DECISION

The district court did not abuse its discretion in denying a request for an extension of time or in concluding J.S.J. did not rebut the presumption in favor of adult certification.

**Affirmed.**