## YOUNG v. POTTS.

## POTTS v. YOUNG.

### In re HIGBEE CO.

### Nos. 10412, 10413.

Circuit Court of Appeals, Sixth Circuit. May 5, 1947.

R. W. Purcell, of Cleveland, Ohio (R. W. Purcell, of Cleveland, Ohio, on the brief) for Robert R. Young.

C. Craig Spangenberg, of Cleveland, Ohio (C. Craig Spangenberg, of Cleveland, Ohio, on the brief) for J. Fred Potts.

Charles J. Odenweller, Jr., and John R. Young, both of Cleveland, Ohio and Roger S. Foster, David Ferber, and Aaron Levy, all of Philadelphia, Pa., for Securities and Exchange Commission.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The issues presented in these appeals grow out of differences between the litigants in interpreting a mandate of the Supreme Court issued in pursuance of its opinion in Young v. The Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890, reversing our decision in 6 Cir., 142 F.2d 1004, and directing a remand to the district court for an accounting of profits made by Potts and Boag in the sale of preferred stock in the Higbee Company, together with an appeal which they had perfected to review a plan of reorganization for that company, confirmed by the district court.

Prior to the transactions here involved the Higbee Company had filed a voluntary petition for reorganization. It operated a department store in Cleveland, with assets at the time of more than $6,000,000, and was a corporation with three types of stock, common and first and second preferred. Two of its directors, Bradley and Murphy, had acquired a junior debt against the company of nearly $2,000,000. The plan of reorganization provided that this junior debt was to be awarded $600,000 in new notes and a block of common stock. Potts and Boag who owned some of the first preferred shares, objected to confirmation on the ground that the plan gave the junior indebtedness too great a share in the debtor's assets. When the stockholders' committee, of which they were members, approved the plan, they resigned and announced the formation of a new committee to press objections to the junior debt allowance, and when, notwithstanding their objections, the district court confirmed the plan, they appealed from its decree and sought to have the confirmation set aside. On March 7, 1942, while their appeal was pending, they sold their stock together with the appeal to Bradley and Murphy, the claimants under the junior debt. The consideration was $115,000, of which Boag, who transferred 10 shares, received $20,000, and Potts, who sold 250 shares, $95,000. Upon motion of Bradley and Murphy the appeal was then dismissed.

Appellant Young, a preferred stockholder, had sought to intervene to prosecute the appeal, but his petition had been denied. Young then, on behalf of himself and all other preferred stockholders, petitioned the district court to compel Potts and Boag to account to the debtor for the difference between what they had received and the fair value of their stock, or in the alternative to pay over that difference to the preferred stockholders. Young's petition was dismissed. We, by per curiam, affirmed [142 F.2d 1004], but the Supreme Court granted certiorari and reversed, deciding that the sale of the appeal by Potts and Boag was unlawful and that they must account for the profits arising out of the transaction. When the Supreme Court mandate reached the district court the cause was referred to a Special Master for an accounting. He recommended that Potts, upon the $95,000 received by him from Bradley and Murphy, should be allowed a credit for $16,346.14, which was the agreed market price of the stock at the time of its sale in 1942, and $10,595.67 for expenses incurred during the reorganization proceedings. Boag had, in the meanwhile, paid the full $20,000 he had received and had disappeared from the litigation. Upon exceptions to the Master's report, the district judge allowed Potts a credit for his stock at its par value of $100 a share, reduced the credit allowed by the Master for attorney fees from $10,000 to $5,000, and allowed Potts a credit of $595.67 for out-of-pocket expenses. While the Master's report was silent as to interest the court directed Potts to pay 4% interest from 1942 on the amount for which he had been held to account.

From the decree Young appeals, contending that Potts should be allowed to deduct from the $95,000 he received, only the market value of the stock at the time of the sale, namely, $16,346.14, and should be

allowed no credit for expenses. He contends also that on the balance the court should have allowed 6% interest rather than 4%. Potts cross-appeals claiming that the fair value of his shares at the time of the sale was $172 a share, or a total of $44,000, that he should have a credit for expenses of $13,000 and that no interest is legally collectible upon the accounting award.

The first question to be decided relates to the amount for which Potts should be held to account to the preferred stockholders for the sale to Bradley and Murphy of his rights in the appeal proceedings, which were expressly included in the written contract between him and Boag as vendors and Bradley and Murphy as vendees. This involves consideration of the grounds upon which Young v. Higbee Co., supra, was decided. There it was held that Potts and Boag, by appealing from a judgment which affected a whole class of stockholders, owed an obligation to them to act in good faith; that they cannot avail themselves of the statutory privilege of litigating for the interest of a class and then shake off their self-assumed responsibilities to others by trading in the rights of others for their own aggrandizement; that in the contemplation of the statute which authorized the appeal its fruit properly belonged to all the preferred stockholders; that one creditor cannot make that fruit his own by the simple appropriation of it; that the consideration for the sale was not merely their own interest in the bankrupt estate but the interest of all preferred stockholders; that the money they received in excess of their interest as stockholders, was not paid for anything they owned,— that it came to them in settlement of litigation which, if carried to a successful conclusion, would have added to the value of shares of other preferred stockholders of the common debtor, and that its fruit properly belongs to all the preferred stockholders. It is clear from this rationalization that Potts and Boag were fiduciaries and that they owed the utmost of good faith to other stockholders of the same class.

The standard of conduct applied by the court in the Higbee case is that we invoked in In re Van Sweringen Co., 6 Cir., 119 F.2d 231, where, with approval, we quoted the observation of Chief Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 459, 164 N.E. 545, 546, 62 A.L.R. 1, "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate." See also Monroe v. Scofield, 10 Cir., 135 F.2d 725; In re Norcor Mfg. Co., 7 Cir., 109 F.2d 407.

It is undisputed that there were market transactions in the first preferred shares of the Higbee Company from January to April, 1942, at prices ranging from $59.25 to $62. While many of these transactions involved small blocks of shares, one was for 119 shares. The total shares owned by Potts and Boag was 260, out of 11,399 shares of the preferred stock outstanding. The basis upon which Potts contends that the value of his stock was $172 per share, is a report of the Securities and Exchange Commission advising on the reorganization plan. Reorganization value in the report was based upon estimated future earnings which were not expected to be available for dividends on the securities to be exchanged for the original stock until the sixth year from the date of confirmation. By his argument Potts seeks to be placed in the shoes of stockholders who did not sell their interest in the debtor but continued to share the hazards of remaining in the enterprise. It ignores the principle that doubts are to be resolved against fiduciaries so as to exclude profits from conduct inconsistent with the interest of their cestui que trust.

To his view Potts responds that it treats him as a wrong-doer and as a converter of the stock, and that no court has yet indicated that he was a trustee of the stock or had any fiduciary relationship with respect to the shares which he owned. He had a right to sell them for such price as he considered fair and reasonable, and likewise a right to hold them and ride with the organization until their fair value could be received in the market. He insists that he converted no stock, did no wrong in selling his shares, and for these reasons he should not be prejudiced by the application of the punitive rule applied to trustees

who convert the stock of others. The argument is tenuous if not, indeed, specious, and ignores the basis for the Supreme Court's decision.

Potts is not held to account for the sale of his stock—he is held to account for selling out the interests of other preferred stockholders by the transfer of rights to the appeal so as to permit the purchaser of his stock to dismiss it. Bradley and Murphy were not interested in buying stock,—they were buying-off a dissident stockholder who, by his appeal, jeopardized a plan by which their junior interests were to be awarded a substantial share in the Higbee assets. If Bradley and Murphy had desired 260 shares of first preferred stock they could have bought them in the open market for $62 per share, and perhaps for substantially less. Instead, they paid Potts $380 per share. The difference between that and the market value of the Higbee shares was precisely what Potts received for transferring his rights in the appeal—rights which belonged not to Potts and Boag alone, but to all preferred stockholders. It is as simple as that, and this amount is the fruit of the tree, for which Potts must account. There is no basis in the record for the finding that the Potts stock had a value equal to par, and neither party contended for such valuation.

 The next question is whether, under the terms of the mandate, Potts is entitled to credit for attorney fees and expenses incurred during the reorganization proceedings and in taking the appeal. He also claimed a credit below for the value of his own time and fees paid to his law partner. The first item is not here pressed. Section 249 of the Bankruptcy Act, 11 U.S.C.A. § 649, provides that persons seeking compensation for services or reimbursement for costs and expenses, must first file with the court a sworn statement that their claims against the debtor were not acquired or transferred after commencement of proceedings, and provides that no compensation or reimbursement shall be allowed without the prior consent or subsequent approval of the court. No such statement was filed prior to the sale of the Potts stock, and there was no subsequent approval of it. Potts contends that the statute does not

apply to him because he is seeking no compensation or reimbursement from the bankrupt estate as such for services rendered in the reorganization. Whatever the stockholders will get from this accounting, he urges, is due to his appeal and he should, therefore, be allowed his expenses. It is a novel contention that one who profits from the sale of what he does not own should be allowed the cost of such enterprise when, at long last, he is compelled to disgorge. The Supreme Court suggested that had the appeal succeeded and the claim of the junior indebtedness been reduced to the advantage of all stockholders, Potts and Boag might have been awarded compensation for their services. The converse must be equally true, even though it may not now be determined what the preferred stockholders lost by the sale and dismissal of the appeal. It has been repeatedly held by controlling authority that one who represents conflicting interests and so fails in the exercise of good faith is to be denied compensation or reimbursement for expenses. Woods v. City Nat. Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L. Ed. 820; American United etc. v. City of Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860; Crites, Inc. v. Prudential Insurance Co., 322 U.S. 408, 64 S.Ct. 1075, 88 L.Ed. 1356. No credit will be allowed to Potts as compensation for his own time, or for fees to counsel or out-of-pocket expenses. The courts have repeatedly pointed out in interpreting § 649, that trafficking in the securities of the debtor has been one of the most persistent evils in reorganization. In re Cosgrove-Meehan Coal Corp., 3 Cir., 136 F.2d 3; In re Reynolds Investing Co., 3 Cir., 130 F.2d 60. Potts gambled at his own risk. The gamble failed and he must foot the bill.

 There remains the question of interest. While the claim of the preferred stockholders was not, in true sense, a liquidated claim, it was capable of definite ascertainment in the light of the principles here applied. It is fixed doctrine that in an equity proceeding the chancellor's discretion in permitting interest should not be upset unless there has been clear abuse of it. Sebastian Bridge District v. Hedrick, 8 Cir., 4 F.2d 346; Certiorari Denied Elkan

v. Sebastian Bridge District, 268 U.S. 690, 45 S.Ct. 510, 69 L.Ed. 1159; Seaboard Surety Co. v. Spear, 6 Cir., 119 F.2d 849. This is so even though the claim be unliquidated. Pennsylvania Steel Co. v. New York City R. Co., 2 Cir., 198 F. 778. Though no reason appears why the court should have fixed the interest rate at 4% rather than at 6% which is customary in Ohio in the absence of contract, and which by statute, § 8305 (Page's Ohio General Code Annotated), applies generally to judgments arising out of contract "or other transaction," yet this also is within the discretion of the court, and no showing having been made of abuse we will not interfere with it.

The cross-appeal is dismissed. The decree below is set aside and the cause remanded to the district court for the entry of a decree that Potts pay over to the Special Master the sum of $78,653.86, together with interest thereon at the rate of 4% per annum from March 7, 1942, to the date of payment. Since there has been no challenge to the provisions of the original decree governing the distribution of the avails of the accounting from both Potts and Boag, they will be carried over into the new decree, as will the provision for costs, to which must now be added the costs of the appeal and defense against the cross-appeal.

Reversed and remanded for further proceedings in conformity herewith.