IN RE TRUST UNDER WILL OF MAX SPILKA, deceased.

SIDNEY B. SMITH & Co., appellee, v. ELVAN LOWE SPILKA and HERBERT J. SPILKA, individually and as trustees, et al., appellants.

No. 49682.

(Reported in 97 N.W.2d 625)

July 24, 1959.

Alan Loth, of Fort Dodge, for appellants.

Rider, Bastian & Beisser, of Fort Dodge, for appellee.

Garrett, J.—This is an action in equity in which Sidney B. Smith & Company, hereinafter referred to as Smith, claimed fees of $5508.20 for services as an accountant and witness allegedly rendered to the Spilka trust in litigation involving the trust property.

For a clear understanding of the facts out of which this action arose a brief statement of the circumstances giving rise to the services on which the claim is based appears necessary.

Max Spilka's will was probated in April 1951. It set up four trusts, hereinafter referred to as the trust, one for delivery to each of his children on his or her thirty-fifth birthday. The oldest son, Elvan Spilka, attained that age in May 1957. He, together with Louis Rabiner and the Central National Bank & Trust Company of Des Moines, was a trustee.

Rabiner and Max Spilka had been equal partners in the Rabiner Realty Company. As surviving partner Rabiner kept control of all assets for several years, claiming ten per cent of the gross income for that service. These assets were valued at around $300,000.

In September 1955 the real estate, constituting the greater part of the partnership property, was divided in kind but Rabiner refused to make a final settlement and accounting or permit an examination of his books and records. He was in the peculiar position of being one of the executors of the Spilka estate, a trustee of the trust created by the will and surviving and managing partner of the realty company with duty to deliver half of the partnership assets to the trust. As is often the case in such situations serious controversies arose.

One of the conditions upon which the bank agreed to assume the duties of trustee was that Rabiner should make a complete settlement with the trust and that, thereafter, it should be the sole manager of the trust property.

The beneficiaries of the trust, upon the refusal of Rabiner to make final settlement, brought suit in equity to enforce such settlement. The court ordered the probate matters and suit in equity consolidated for trial of the issues then raised. The bank at first insisted on having nothing to do with the litigation but when the issues were made up and throughout the trial it appeared the bank was taking the side of Rabiner against the trust. Many days were devoted to the trial. The reports of Rabiner as to the partnership property and of the bank as trustee were vigorously attacked, the claim being the bank as trustee was making a settlement with Rabiner, liquidating partner, which was unfair to the trust.

The claimant had done accounting work for the various parties prior to the work giving rise to the instant claim. The beneficiaries urged that, so far as the matters here involved are

concerned, claimant was employed by Rabiner for his own purposes and by the bank to aid it in making and explaining reports it was required to make and for which service it was paid and that claimant was not employed by the trust. It was their further claim that the services rendered were adverse and detrimental to the trust estate.

The court ordered that "trial of the fee application will be in equity" but separately from other applications pending. On May 27, 1958, the court, after hearing the evidence, entered its order allowing Sidney B. Smith & Company fees of $750 and expenses of $40. From that order Elvan and Herbert Spilka as trustees and all four beneficiaries have appealed.

I. It is contended appellee had no contract with the trust because such contract required the unanimous action of all trustees; that Rabiner and the bank having employed Smith for their own benefit were precluded from employing him for the trust; that there is no proof of an express or implied contract, and that appellee failed to prove any specific items of its service were of benefit to the trust and the amount and value thereof.

The will creating the trust provided: "The trustees shall have the following rights and powers: * * * To * * * acquire or deal with all trust property, * * * in the sole discretion 'of the trustees,' without any application to, or order of, court * * *. To make any agreements 'which in their sole discretion' are deemed advantageous to the trust; ** *. To employ agents, attorneys, accountants and other necessary services for the benefit of the trust.* * *."

The trial court found Smith's services were worth $5063.98 but were worth only $790 as regards the trust. No one has questioned the value of the services rendered. The question is, should the trust be held for any part thereof? The court order, as set forth in the record, states:

"Though in good faith, Central was so convinced of the rightness of Rabiner's position that it became embroiled on his side. To some extent it opposed its beneficiaries and prolonged the litigation, * * *. The problem as to Smith's fees is more difficult. Smith performed valuable, expert services during the litigation, but largely on the Rabiner branch of the trial. The

Bank's employees were perfectly competent to make the presentation concerning the Bank's opening inventory and accounting, with but little aid from accountants."

█ █ From the record it is evident the accounting services were had at the instance and request of Rabiner and the bank to aid them in making and explaining their inventory and reports. It was their duty to make reports which were understandable or which they could explain without the aid of outside accountants. Rabiner, who owed the trust, although at that time also a trustee, stood in a position adverse to the trust. As trustee he and the bank stood in a fiduciary relationship to the beneficiaries and thus a higher standard of conduct was required of them. Restatement of the Law, Trusts 2d, section 170(2). "The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required personally to perform." Restatement, Trusts 2d, section 171, page 373.

Elvan Spilka, beneficiary and trustee, had no part in employing appellee, and, with the other beneficiaries, insists such employment required unanimous action of the trustees if the trust is to be bound. There is substantial authority for their position. The trust instrument authorizes the trustees to do certain things which, in their sole discretion, they deem advantageous to the trust. It confers no authority for their acting separately, saying, "The trustees shall have the following rights and powers." It does not say "part of the trustees" or "a majority shall have" certain powers.

█ "Where several trustees in a private trust have all accepted and are exercising the office, their powers, interest, and authority are equal and undivided, and they cannot act separately, but must act as a unit, except where the authority to act otherwise is given by statute or by the instrument creating the trust, or except in the case of an urgent emergency. * * * A disagreement between cotrustees of equal authority renders the act of each a nullity." 90 C. J. S., Trusts, section 258, pages 292–294; Cooper v. Federal National Bank, 175 Okla. 610, 53 P.2d 678; Restatement, Trusts 2d, section 194; 2 Scott, Trusts, section 194. If there was an emergency here it was created by the failure of Rabiner and the bank as trustees

to have their reports in proper form, and they could hardly claim this situation arose suddenly.

■ Smith knew the parties with whom he dealt and was bound at his peril to know the extent of their powers. Zion Church of Evangelical Assn. v. Parker, 114 Iowa 1, 86 N.W. 60. "A trustee has no authority to employ counsel at the expense of the estate to represent the interest of one beneficiary, in hostility to that of another. To permit him to do so would be to allow the trustee to pay from the property of one litigant the counsel fees of his opponent." Fleming v. Casady, 202 Iowa 1094, 1104, 211 N.W. 488, 493. The same principle applies to accounting services and where it was for the purposes of the litigation it was, no doubt, of special value to Rabiner in view of the fact Smith is also a lawyer. The court is required to interfere if an allowance has been made for something that is not for the benefit of the trust. In re Trusteeship of Clark, 174 Iowa 449, 457, 154 N.W. 759, 761, 156 N.W. 353.

In Young v. Potts, 6 Cir., Ohio, 161 F.2d 597, 600, it is said: "It has been repeatedly held by controlling authority that one who represents conflicting interests and so fails in the exercise of good faith is to be denied compensation or reimbursement for expenses." (Citing many cases)

It is not claimed Smith acted in bad faith but he went to great length to aid Rabiner and the bank in proceedings adverse to the trust. The court removed Rabiner as trustee which should make it unnecessary to say more. "Where a claimant * * * was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted." Woods v. City National Bank & Trust Co., 312 U. S. 262, 268, 61 S. Ct. 493, 497, 85 L. Ed. 820, 825.

■ It is true courts will not permit a trust to fail because of the refusal of compensation to the trustees or proper or necessary employees, but such situation contemplates loyal service of value to the trust and not services adverse to its interests.

■ Appellants correctly assert appellee's claim is based upon an express contract. The trial court did not so find and allowed, on a quantum meruit basis, only a small portion of the amount claimed. The record does not disclose any agreement,

express or implied, that payment would be made from the trust. Smith knew of the controversies between the trust and Rabiner and the bank, and with such knowledge, when Rabiner or the bank asked him to do anything he did it, assisting them as requested. No one asked him to do anything specifically for the trust and if he rendered any service for it such service was merely incidental to what he was asked by Rabiner and the bank to do in their behalf. "It is well established that if a cause of action is based on contract recovery may not be had if the proof offered in support thereof establishes a quantum meruit." In re Estate of Hill, 230 Iowa 189, 196, 297 N.W. 278, 281; Sammon v. Roach, 211 Iowa 1104, 235 N.W. 78; In re Estate of Oldfield, 158 Iowa 98, 138 N.W. 846. "It is true, as defendants argue, that since plaintiff has pleaded an express oral contract he cannot recover on an implied contract or upon quantum meruit." Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 871; Maasdam v. Estate of Maasdam, 237 Iowa 877, 884, 24 N.W.2d 316, 320; 17 C. J. S., Contracts, sections 5 and 569a; 12 Am. Jur., Contracts, section 7. "Plaintiff had the burden to prove the contract declared upon by him." Lautenbach v. Meredith, supra, and cases cited. We believe he has failed to meet that burden.

"It often happens that there is an express contract as to the employment, but no agreement as to the amount of compensation, in which case the law implies a promise to pay reasonable compensation." In re Estate of Hill, supra, at page 201 of 230 Iowa; In re Estate of Oldfield, supra; Hall v. Luckman, 133 Iowa 518, 110 N.W. 916. The difficulty with claimant's case is that he failed to prove the alleged contract with the trust or that his services were of value to it except indirectly as he helped Rabiner and the bank to perform duties they were bound to perform to meet their obligations to the trust, nor did he plead quantum meruit. The record is barren of proof that any specific items of service were rendered for the trust in a contest where his services were sought and used by opposing sides against the trust. Claimant has not shown us where the trust received benefit from the services rendered and we are unable to single out any particular service beneficial to the trust and

for which it should pay in view of his services to parties opposing the trust. In re Trusteeship of Clark, supra.

██ "It has been many times held that if there is no evidence to enable the jury to form a reasonable estimate as to the portion of damage resulting from the separate causes, it cannot arbitrarily apportion a part of the damages to the acts for which defendant is responsible." Platter v. City of Des Moines, 237 Iowa 348, 355, 21 N.W.2d 787, 790.

This is simply a case where, according to the record, Rabiner and the bank, although trustees, sought and received the services of appellee in a controversy they were having with the trust, and, his services being adverse to the trust, he should not now look to the trust for his pay.

██ "It is a strict duty of a trustee to keep and render a full and accurate record and accounting * * * to the cestui que trust, and the duty is strictly enforced by the courts. * * *." 54 Am. Jur., Trusts, section 497.

The questioned inventory and reports did not meet this standard, as the trial court properly found. The burden is upon a trustee to sustain his report. In re Estate of Moe, 213 Iowa 95, 237 N.W. 228, 238 N.W. 718; In re Estate of Mowrey, 210 Iowa 923, 232 N.W. 82; In re Estate of Eschweiler, 202 Iowa 259, 209 N.W. 273.

Section 638.33, Code of 1954, provides: "Each report of an executor * * * or trustee shall be self-explanatory, so that the clerk or court, from a perusal thereof, may understand the matter in hand without explanations or being compelled to examine or refer to other papers in the case."

Smith's services in explaining and reconciling inadequate reports are not properly chargeable to the trust. "A trustee is chargeable on an accounting with the expense of employing an accountant, made necessary by the inadequacy of the trustee's accounts." 54 Am. Jur., section 513, page 408; 90 C. J. S., Trusts, section 414.

The bank's attorney testified in support of Smith's claim in part as follows:

"The Bank filed no vouchers or explanations with their reports. Smith had to come in and explain the Bank's inaccurate book entries; the first items where they put in 100% of some

items instead of 50%. He also explained other items of the report to show it all ultimately got back where it belonged, which I didn't understand until he explained it. I remember one figure at the end he explained was the true figure. There were a lot of things about the report that I didn't understand. Most objections about the report were the Bank's joining with Rabiner, and things of that type, plus the difficulty in understanding the accounting on 'income cash' and 'principal cash' and 'delivery' items. I never saw that kind of accounting and don't understand it. I don't think Robinson explained it very well."

It is obvious from this testimony that the bank's report did not meet the statutory requirements. Had it been the kind of report the trust and beneficiaries were entitled to and which the bank was capable of making it would not have been necessary to call in outside accountants to correct, reconcile and explain it. What we have said here disposes of the other questions raised by appellants.

In support of their position appellees have cited the following authorities: Chirurg v. Ames, 138 Iowa 697, 116 N.W. 865; In re Estate of Smith, 223 Iowa 172, 271 N.W. 888; In re Guardianship of Husmann, 245 Iowa 830, 64 N.W.2d 252; 54 Am. Jur., Trusts, sections 513, 523, 524; Turner v. Ryan, 223 Iowa 191, 272 N.W. 60, 110 A. L. R. 554; In re Trust of Larkins, 243 Iowa 322, 51 N.W.2d 396, and In re Estate of Rorem, 245 Iowa 1125, 66 N.W.2d 292, 47 A. L. R.2d 1089. We have examined them carefully and find in them nothing in conflict with what we here hold.

For the reasons stated the decree of the trial court is reversed.—Reversed.

All JUSTICES concur.