**CROWN INDUSTRIES, INC., Plaintiff-Appellant,**

v.

**BOYERTOWN BURIAL CASKET COMPANY, Defendant-Appellee.**

**No. 14619.**

United States Court of Appeals
Sixth Circuit.

March 30, 1962.

Irving Harris, Cincinnati, Ohio, Charles F. Hartsock, Cincinnati, Ohio, on brief; Cors, Hair & Hartsock, Cincinnati, Ohio, of counsel, for appellant.

Robert T. Keeler, Cincinnati, Ohio, Charles D. Lindberg, Cincinnati, Ohio, on brief; Taft, Stettinius & Hollister, Cincinnati, Ohio, of counsel, for appellee.

Before MILLER, Chief Judge, and McALLISTER and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Defendant-appellee, Boyertown Burial Casket Company (hereinafter referred to as Boyertown) agreed to buy, and plaintiff-appellant, Crown Industries, Inc., formerly the Cincinnati Coffin Company, (hereinafter referred to as Cincinnati) agreed to sell to Boyertown, substantially all of the assets of Cincinnati. On September 16, 1957, the date of closing, all of the assets sold were transferred to Boyertown. At that time, Boyertown paid Cincinnati $315,590.00. Of that amount $200,000.00 was paid as an estimated minimum price for Cincinnati's inventory of finished and partly finished goods, and other materials on hand. Paragraph 4 of the agreement, entitled "Closing," deals with the price to be paid for such inventory. The price therefor was to be determined by taking the inventory and valuing the items thereof at the lower of cost or market. If the parties themselves were unable to agree upon the valuation, such disagreement was to be resolved by an arbitrator named in the agreement.

It was further provided that if final inventory figures were not available at closing, an estimated minimum amount of inventory would be agreed upon, which amount was to be paid by Boyertown, "subject to additional payment by, or re-

fund to, it *when final figures become available.*" (All italics used herein are provided.) The receipt for such estimated minimum payment, given to Boyertown by Cincinnati at closing, contained a recital that should the purchase price of the inventory, "determined as provided in the agreement," total more than said minimum figure, Boyertown *"will promptly pay * * ** the amount by which such purchase price so determined is more than" the aforesaid minimum figure.

Cincinnati and Boyertown were unable to agree upon final figures for the inventory, and Cincinnati brought this suit against Boyertown for $159,452.08, the amount it claimed was the proper excess over the estimated minimum. The District Judge, pursuant to the purchase and sale agreement, appointed an arbitrator to determine the correct amount payable. A final figure of $78,157.87 was fixed by the arbitrator as the excess of the inventory value over the minimum amount paid on September 16, 1957, by Boyertown to Cincinnati. Twenty-one days after the arbitrator's award, Boyertown paid such amount. The District Judge allowed interest on it from the date of the award, December 2, 1960, to the date of payment, December 23, 1960. Appellant claims that it should receive interest on the award from September 16, 1957, to December 23, 1960.

■ Jurisdiction in this case is based upon diversity of citizenship. The contract here involved was made and performed in Ohio. Consequently, Ohio law is controlling. Under Ohio law, interest, unless otherwise contracted for, is recoverable, "* * * *when money becomes due and payable upon any * ** instrument of writing upon any book account, or settlement between parties * * * at the rate of six per cent per annum, and no more." Page's Ohio Revised Code Annotated, § 1309.03. Whether interest is allowable in this case from the date of the closing depends on when the money became due and payable under the terms of the contract. O'Neill v. German, 154 Ohio St. 565, 97 N.E.2d 8,

25 A.L.R.2d 945. The contract provided that Boyertown "will make payment at the closing on the basis of such estimate, *subject to additional payment by * * it when final figures become available.*" That this clause of the contract meant that the amount of the excess was not payable until finally determined is confirmed by Cincinnati's receipt given for the amount paid to it at the closing. The receipt stated that if the inventory value "determined as provided in the agreement" (in this case, by the arbitrator's award) totalled more than the estimate, Boyertown "will promptly pay" such excess. Thus, no part of the excess amount was payable until after the arbitrator's determination and no interest, under Ohio law, began to accrue until that time.

■ We do not think that the fact that on September 17, 1957, Boyertown took possession of the goods constituting the inventory, requires a holding that interest then began accruing on that part of its purchase price as yet undetermined. There was no breach of contract by Boyertown, nor is any claimed. It complied strictly with the terms of the contract, which did not call for the payment of interest. It did not wrongfully detain or withhold the payment of money.

"The law allows interest only on the ground of a contract express or implied for its payment, or as damages for the detention of money, or for the breach of some contract, or the violation of some duty, or where it is provided for by statute; and the courts have authority to determine, in accordance with legal rules and principles, whether or not interest should be directed to be paid." 47 C.J.S. "Interest" § 3, p. 13.

In Herrmann v. Gleason, 126 F.2d 936 (C.A.6, 1942), relied upon by Judge McAllister in his dissenting opinion, a long term lease provided that the stipulated monthly rental should be payable "quarterly in advance." It further provided that for each ten year period after the initial ten year period, the rental should be agreed upon and, in case the parties

failed to agree, it should be determined by referees. Because the parties were unable to agree upon the rental for the third ten year period, referees were appointed to determine the rental to be paid. Twenty months after the last payment of the theretofore agreed upon rentals, the referee's award determined that the fair rental for the period beginning April 1, 1937, and ending March 31, 1947, was "$725.00 per month, *payable quarterly in advance.*" On those facts, we held that the landlord was entitled to interest on the unpaid installments of rent during the period involved, from the dates on which they were payable, both by the lease and the referee's award; that is, *"quarterly in advance."* We think that our holding in the Herrmann case is not inconsistent with our holding in the case at bar. Such holding did no more than allow interest on unpaid installments of rent from the dates on which such installments were made *payable by contract.* In the instant case, the District Judge allowed interest from the date when the excess amount became payable by contract, the date of the arbitrator's award.

We find no reason, on the facts presented here, to imply a promise by Boyertown to pay interest between the time of transfer of possession and the time of the arbitrator's award. Cincinnati contracted that, as to a portion of the purchase price, it was not entitled to receive that money until "final figures become available." If appellant desired to receive interest on such money prior to the time it was due and payable, "the place [was] in the instrument to so stipulate." O'Neill v. German, 154 Ohio St. 565, 570, 97 N.E.2d 8, 25 A.L.R.2d 945. The fact that possession of the goods took place prior to the arbitrator's determination is not germane here. O'Neill v. German, supra, at 572.

Other cases relied upon by appellant are inapposite. A review of these cases —Crescent Mining Co. v. Wasatch Mining Co., 151 U.S. 317, 14 S.Ct. 348, 38 L. Ed. 177; Hettler Lumber Co. v. Olds, 242 F.2d 456 (C.A.6, 1957); Chicago Railway Equipment Co. v. Superior Charcoal Iron Co., 12 F.2d 235 (C.A.6, 1926), discloses factual situations where money was unpaid after a time at which it became due or payable, or where interest was allowed on damages for breach of contract. These are not the facts before us. Young v. Potts, 161 F.2d 597 (C.A.6, 1947), dealt with the power of equity to make a discretionary grant of interest.

Judgment affirmed.

McALLISTER, Circuit Judge (dissenting).

Appellant agreed to sell all of its property to appellee; appellee agreed to pay for it; and September 16, 1957, was fixed as the date of closing or settlement of the contract for the sale and payment. It was also agreed that an inventory of many of the items sold, would be taken jointly by the seller and buyer, beginning September 9, 1957, and continuing until completed. The inventory was to be taken on the basis of cost or market, whichever was less; and it was stipulated that if the parties were unable to agree as to whether cost or market applied to any item, such valuation should be made by a designated arbitrator. It was further agreed that if the total dollar value of these items exceeded $400,000, *as of the date of closing, September 16, 1957,* then the buyer would have the right to eliminate any such items so as to reduce the total dollar value to $400,000.

It was also provided that upon the closing of the contract on September 16, 1957, the buyer would deliver a certified check to the seller for the aggregate amount of the assets including those in which the amount to be paid by the buyer should be determined jointly by seller and buyer on the basis of cost or market, or by the designated third party arbitrator, in case the seller and buyer could not agree.

On September 16, 1957, the buyer paid the seller $315,590; but the parties could not agree on the value of many items in the inventory. The buyer, however,

estimated that these items were of the value of $200,000 and this amount was paid to the seller as part of the $315,590 above mentioned. The seller and buyer then had recourse to the arbitrator named in the contract to determine the value of the questioned inventory items and, accordingly, the balance of the purchase price to which the seller was entitled. The arbitrator determined that the buyer still owed the seller $78,157.87 for the property sold.

It is my view that this sum of $78,157.-87 was part of the purchase price due and payable on September 16, 1957, although the value of certain items of the inventory and the above balance due could not be ascertained until after the above-mentioned date.

The whole contract of sale was based upon the closing and settlement of the contract on September 16, 1957. All of the items of property were specifically sold on that date. Bills of sale and covenants of warranty were given, on that date, by the seller to the buyer, for all the property that the buyer received, including trademarks, trade names, and copyrights. All of the seller's patents were assigned to the buyer on the same day and on that date the seller's president covenanted not to engage in similar business in the future. Moreover, on the same date, in accordance with the terms of the contract of sale, the buyer and seller entered into a lease whereby the buyer went into possession of the seller's showroom, and the seller granted the buyer the right to store the purchased assets on certain of the seller's premises. Everything was done that could be done on the part of a seller to sell and on the part of a buyer to buy; and when all of the property was transferred by the seller, the buyer owed the seller the agreed or arbitrated value of that property. Accordingly, the buyer owed interest on the money subsequently found due by the arbitrator, from the date of the sale of the property. The buyer could not have the property in question, of the fair value of $78,157.87, which had been transferred to it by the seller, as well as the use of the money representing its fair value. It is the buyer's use of the money, to the disadvantage of the seller, that resulted in unjust enrichment.

In Herrmann et al. v. Gleason, 6 Cir., 126 F.2d 936, 940, a case which was given much consideration by this court, it appeared that where tenants had the use of money representing the fair rental value of premises as well as the use of the premises for twenty months *while arbitration proceedings were under way to establish the fair rental value thereof,* in accordance with the lease, under the doctrine of unjust enrichment, the landlord was entitled to restitution by way of interest on the rentals unpaid during such period. The court said:

"Applying the law to the facts in this case, appellee retained and used the premises for a period of 20 months, while arbitration proceedings were under way to establish an agreed fair rental therefor. During this period, appellants were deprived of the receipt of rental, and appellee had the use of the premises, as well as the use of the money representing the fair rental value. When the referees determined such rental value, it expressly dated back to the beginning of the period during which the rentals had remained unpaid. Equity and fairness require that appellants have restitution, by way of interest, on the rentals unpaid during that period. Otherwise, appellee would receive the benefit of the value of the use of such money, to the disadvantage of appellants, and his retention thereof would result in inequity and unjust enrichment at their expense. It is our conclusion that appellants are entitled to the interest claimed."

In accordance with the foregoing, it is my view that the judgment of the district court should be reversed and that the order of the district court should be set aside and the case be remanded for entry of a judgment awarding appellant interest on the sum of $78,157.87 from September 16, 1957.