In the Matter of the ESTATE of Hazel E. ROEHLKE, Deceased,

**Michael Harl Ravnsborg and Samuel Charles Ravnsborg, Appellants.**

No. 2–56891.

Supreme Court of Iowa.

June 25, 1975.

Sewell E. Allen of Allen & Allen, Onawa, for appellants.

Robert M. Underhill of Underhill & Underhill, Onawa, for appellee.

Heard before MOORE, C. J., and MASON, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Two heirs-at-law of the decedent appeal from the trial court's order overruling their objections to the administrator's final report. They contend they are entitled to distributive shares of three bank accounts owned by decedent Hazel E. Roehlke during her lifetime. The trial court held the bank accounts were not assets of the estate and rejected their contention. We affirm the trial court.

I. The objectors challenge the sufficiency of the evidence to support the trial court's findings. A hearing on objections to a fiduciary's final report is an equitable proceeding. § 633.33, The Code; In re Estate of Cory, 184 N.W.2d 693, 696–697 (Iowa 1971). Our review is de novo. Although we give deference to the trial court's findings of fact, we are not bound by them.

Hazel E. Roehlke died intestate at the age of 66 on December 9, 1972. She was a resident of Monona County. Her heirs-at-law are Gretchen Peterson and Eva E. Rounds, her sisters, and the objectors, her nephews. Eva is the administrator of the estate.

The administrator's inventory showed most of decedent's modest estate passed by gift prior to her death or was in joint tenancy with one or the other of her sisters at her death. Consistent with the inventory, the administrator's final report excluded those amounts from the assets available for distribution.

The amounts the objectors contend were wrongfully excluded were held by decedent during her lifetime in a checking account and two savings accounts. The checking account and one savings account were in the Morningside State Bank of Sioux City. The other savings account was in the Northwestern National Bank of Sioux City. The three accounts had originally been joint tenancy accounts of decedent and her husband Otto A. Roehlke. Otto died October 4, 1968. The controversy here relates to changes which allegedly occurred in decedent's ownership of the accounts after Otto's death.

The administrator reported the Morningside State Bank accounts were held by decedent at her death in joint tenancy with Gretchen Peterson. She reported the Northwestern National Bank account had been given by decedent to Eva E. Rounds and Gretchen Peterson, as joint tenants, in May 1970.

The two sisters and officers of each bank testified in the hearing. Bank records of the accounts were received in evidence. From our de novo review, we find the facts to be as we subsequently recite them.

Shortly after her husband Otto's death in 1968, Hazel told her two sisters she wanted to add their names to her accounts as joint tenants. To that end she obtained the signature card on the Morningside State Bank checking account from the bank and had Gretchen sign it next to where Otto's signature was crossed out. Gretchen did so. The language of the card above the signatures of decedent and Gretchen was as follows:

### JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR

We agree and declare that all funds now, or hereafter, deposited in this account, are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us, any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Thereafter the bank showed the account in the names "Hazel E. Roehlke or Gretchen Peterson." Its status was the same at decedent's death. The balance in the account was then $1674.17.

The savings account in the Morningside State Bank was handled in the same way. The only difference in the signature card on this account is that Gretchen's signature was placed lower on the card and an arrow was drawn from there to the line where Otto's signature had been crossed out. The account was held this way at decedent's death. The balance in the account was then $10,580.85.

The Northwestern National Bank savings account was handled differently. At first decedent added only Eva's name to the signature card on this account. The parties disagree on whether a joint tenancy was thereby created. The issue is not material because subsequently, during her lifetime, decedent transferred the account to Eva and Gretchen who together executed a joint tenancy signature card. That account has been in their names since sometime in 1970 or 1971. Its balance at decedent's death was $25,329.75.

■ If the Morningside State Bank accounts were in joint tenancy as contended by the administrator, they were properly excluded from the estate. Principles applicable to establishment of a joint tenancy bank account are explained in In re Estate of Martin, 261 Iowa 630, 638–639, 155 N.W.2d 401, 405–406 (1968). Generally, when a bank account in two names is expressly made payable to either or to the survivor, a joint tenancy exists. The contract of deposit need not be in any particular form to create the joint account, so long as the intent of the parties to do so is manifested. The determinative question is whether the person establishing the account intentionally and intelligently created a condition embracing the elements of joint ownership and survivorship. The substance of the transaction controls. The signature of the beneficiary depositor on an account card is not essential, although its presence or absence is a factor to be considered.

■ In this case all of the evidence supports the trial court's conclusion the Morningside State Bank accounts were held by decedent in joint tenancy with Gretchen Peterson. In re Estate of Stamets, 260 Iowa 93, 148 N.W.2d 468 (1967), and citations; see also McCuen v. Hartsock, 159 N.W.2d 455 (Iowa 1968). The language of the signature cards is clear and unequivocal. There is no assertion or evidence of fraud, duress, or mistake, or that Gretchen was in a confidential relationship with decedent. Cf. In re Estate of Samek, 213 N.W.2d 690 (Iowa 1973). Decedent's intent to establish joint accounts with Gretchen was conclusively shown. Williams v. Williams, 251 Iowa 260, 100 N.W.2d 185 (1959). We hold that the Morningside State Bank accounts were not assets of decedent's estate.

Similarly, we believe the evidence shows the Northwestern National Bank savings account was given by decedent to Gretchen and Eva during her lifetime. For a discussion of the law of gifts, see Varvaris v. Varvaris, 255 Iowa 800, 803, 124 N.W.2d 163, 165 (1963). We hold this account was not an asset of decedent's estate either.

■ II. The objectors in their reply brief allege the trial court erred in placing the burden of proof on them. They point out the burden was on the administrator to sustain her report. In re Trust of Spilka, 250 Iowa 1021, 1028, 97 N.W.2d 625, 629 (1959), and citations. Although they had an opportunity to do so, they did not raise this issue at trial or even in their opening brief. Having not raised it at trial, they may not raise it here. Abodeely v. Cavras, 221 N.W.2d 494, 500 (Iowa 1974). Nevertheless, in our de novo review we have assigned the risk of nonpersuasion to the administrator in examining the sufficiency of the evidence, and we have found the evidence sufficient to sustain her burden. See Maytag Company v. Partridge, 210 N.W.2d 584, 595–596 (Iowa 1973).

Affirmed.