# IN THE SUPREME COURT OF IOWA

No. 22–0328

Submitted January 18, 2023—Filed March 3, 2023

**IN THE MATTER OF THE CONSERVATORSHIP OF JOAN Y. BITTNER.**

**JEFFREY S. BITTNER,**

> Appellant,

vs.

**U.S. BANK NATIONAL ASSOCIATION,**

> Appellee.

---

Appeal from the Iowa District Court for Scott County, Thomas Reidel, Judge.

An adult child of a protected person appeals a district court order overruling his objection to an award of attorney fees to the trustee of an individual retirement account for bringing a declaratory judgment action to establish that the protected person was the beneficiary of that account. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. Waterman and May, JJ., took no part in the consideration or decision of the case.

Jeffrey S. Bittner, pro se, for appellant.

Lynn W. Hartman and Nicholas D.K. Peterson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee U.S. National Association.

**MANSFIELD, Justice.**

### I. Introduction.

This appeal relates to attorney fees. It is a companion case to *U.S. Bank, N.A. v. Bittner*, ___ N.W.2d ___ (Iowa 2023), also decided today.

Shakespeare recognized the importance of attorney fees. To quote Lear's Fool, who was definitely not a fool: "Then 'tis like the breath of an unfee'd lawyer. You gave me nothing for't." William Shakespeare, *King Lear* act 1, sc. 4, l. 133–34. The issue in this case is whether the trustee of an individual retirement account (IRA) is entitled to recover over $200,000 in attorney fees from the assets of that account for successfully litigating its view of who was the proper beneficiary of the IRA. We conclude that the district court did not abuse its discretion in concluding that fees were potentially recoverable and that $200,000 was a reasonable total sum given the Lear-like quality of this contentious intrafamily litigation. However, we also conclude that the district court abused its discretion in ordering the eighty-nine-year-old protected person under this conservatorship to pay for two sets of attorneys—her own and the trustee's—to litigate the same position in the same litigation. Accordingly, we affirm in part, reverse in part, and remand so that the district court may establish a lower award of attorney fees consistent with our opinion herein.

### II. Factual and Procedural Background.

In *U.S. Bank, N.A. v. Bittner*, U.S. Bank, N.A. filed a declaratory judgment as trustee of an IRA established by the decedent, Richard Bittner. ___ N.W.2d at ___. U.S. Bank named a number of defendants: Richard's widow, Joan; Joan's

conservator, MidWestOne Bank; Richard's four children: Jeffrey, Kimberly, Todd, and Lynn; and a marital trust created by Richard's will. *Id.* U.S. Bank asked the court to determine that Joan was the 100% beneficiary of the IRA. *Id.* The district court so ruled, and in our other opinion today, we have affirmed that order. *Id.*

After the district court ruled that Joan was the 100% beneficiary of Richard's IRA, Joan's conservator filed an application in the conservatorship to pay U.S. Bank's attorney fees. To justify payment of those fees, Joan's conservator invoked the terms of the IRA agreement between Richard and U.S. Bank. That agreement provided, among other things, that U.S. Bank would be "indemnified and held harmless . . . for all of its otherwise unreimbursed expenses (including, without limitation, [U.S. Bank]'s legal fees) under this Agreement"; that U.S. Bank "may employ . . . legal counsel"; and that U.S. Bank would be "reimbursed by the IRA Trust Account, [Richard,] or the beneficiary(ies) for [U.S. Bank]'s costs incurred in employing such parties." The application filed by Joan's conservator sought authorization to pay a total of $205,020.42 in attorney fees and expenses incurred by U.S. Bank's counsel—Simmons Perrine Moyer Bergman PLC (Simmons Perrine).[1]

Jeffrey objected to the attorney fee application on several grounds. First, he argued that U.S. Bank breached a duty of impartiality by seeking a declaratory judgment in favor of one potential IRA beneficiary—Joan—to the detriment of other potential beneficiaries. Jeffrey maintained that U.S. Bank

---

[1]All but $999.22 of the $205,020.42 consisted of attorney fees. The $999.22 in expenses appear to be taxable. *See* Iowa Code §§ 625.1, .14 (2020).

should not have taken sides but should have filed an interpleader and let the potential beneficiaries sort it out among themselves. Second, Jeffrey argued that the doctrine of issue preclusion foreclosed the claim for attorney fees. In that regard, Jeffrey relied on a previous district court order from October 2021 that had largely denied a separate U.S. Bank attorney fee application, while criticizing the bank for resisting Richard's efforts to have the bank removed as co-executor of Richard's estate. Third, Jeffrey argued that the attorney fees sought were excessive. Specifically, Jeffrey urged that Simmons Perrine's rates were too high, that the law firm had performed unnecessary tasks, and that two attorneys had not been needed to try the case. No party other than Jeffrey objected to the fee application.

U.S. Bank—still represented by Simmons Perrine—intervened and urged the court to approve the fee application. Thereafter, U.S. Bank and Simmons Perrine took on the primary responsibility for defending the fee application. Their filings clarified that the fees and expenses—if approved—would be paid from the IRA assets of which Joan was 100% beneficiary. On January 12, 2022, the district court held a hearing on the fee application. Our record does not contain a transcript of that hearing.

On February 17, the district court sitting in probate entered a written order rejecting all of Jeffrey's arguments and approving payment of virtually all the requested fees. The court concluded that "[w]hile U.S. Bank could have elected to pursue this matter via interpleader, the Court finds it was not inappropriate for it to do so via a declaratory judgment action." It also determined that the IRA

agreement required indemnification. In addition, the district court decided that issue preclusion did not apply to bar a fee award because the prior ruling involved different issues. Lastly, the district court found that the Simmons Perrine fees were reasonable. In the court's view, their time spent was reasonable; the use of two attorneys was reasonable (Jeffrey had hired another attorney to assist him); and the rates were "reasonable for the community," although "at the top end for the community." After deducting $151 for a stray time entry that related to another matter, the district court approved $204,969.42 to be paid from the IRA assets to U.S. Bank. Jeffrey appealed this ruling.

**III. Standard of Review.**

We review awards of attorney fees for abuse of discretion. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020).

**IV. Legal Analysis.**

We will turn to Jeffrey's second and third arguments, saving his initial argument for last.

**A. Issue Preclusion.** "[I]ssue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Dorsey v. State*, 975 N.W.2d 356, 361 (Iowa 2022) (alteration in original) (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)).

We agree with the district court that issue preclusion does not apply. The October 2021 ruling cited by Jeffrey denied most of a U.S. Bank request for

attorney fees in its capacity as co-executor of Richard's estate on the ground that the bank had unreasonably resisted Jeffrey's request for its removal as co-executor. Richard's will allowed Jeffrey to select a co-executor other than the bank if Jeffrey was "dissatisfied" with the bank's services, but the bank plowed ahead over Jeffrey's opposition. It then asked to be awarded extraordinary fees for the attorney fees incurred in unsuccessfully resisting Jeffrey's efforts to have it removed as co-executor. The district court sitting in probate said no. The court also observed that U.S. Bank had a conflict of interest in serving as both co-executor of Richard's estate and trustee of his IRA.

As the district court correctly observed, the issues are different here. Whether U.S. Bank should have insisted on fighting its removal as the co-executor of Richard's estate is different from whether it had the right to remain IRA trustee and seek a judicial determination of the IRA's proper beneficiaries. When the court removed U.S. Bank as co-executor in March 2021, it did so based solely on the will provision allowing Jeffrey to select a new co-executor, without finding a conflict of interest. And, on the same day it removed U.S. Bank as co-executor, the court ruled for U.S. Bank in the declaratory relief action it had brought in its capacity as IRA trustee.

**B. Reasonableness of Simmons Perrine Fees.** We also find no abuse of discretion in the district court's ruling that the Simmons Perrine fees were reasonable. Their two primary attorneys, both with considerable experience, billed at rates of $302 and $265 per hour, respectively. At first blush, the bill of $204,969.42 seems surprising for a two-day declaratory judgment trial, but this

was no-holds-barred litigation from Jeffrey's standpoint. Jeffrey vigorously contested the designation of Joan as "primary beneficiary" of the IRA from many different angles. He did so even while conceding that the outcome probably made no difference to him financially. Either way, he would basically get one-quarter of what was left of the IRA assets after Joan's death.[2] Notably, even while claiming that Simmons Perrine's fees were excessive, Jeffrey resisted any discovery into his own time spent on the matter.

**C. Advocating for One Potential Beneficiary Over Another.** However, we do conclude the district court abused its discretion in one respect. Jeffrey points out that in *Northern Trust Co. v. Heuer*, the Illinois Appellate Court reversed an award of attorney fees to a trustee in a proceeding the trustee had brought to determine who was the proper beneficiary of a portion of the trust. 560 N.E.2d 961, 965 (Ill. App. Ct. 1990). The court explained, "When there are conflicting claims to trust funds, a trustee is not required to make a determination as to the rights of the prospective claimants but should file an interpleader action to avoid acting at its own peril." *Id.* at 964; *see also Bank of N.Y. v. Reg'l Hous. Auth. for Region Three*, 120 P.3d 471, 477–78 (N.M. Ct. App. 2005) ("[The appellants] have not cited a single case in which a trustee was held to have breached a fiduciary duty to a beneficiary by the mere act of bringing an interpleader action to resolve conflicting claims of entitlement to trust benefits, nor have they cited a single case holding that a trustee has an obligation to take

---

[2]In fact, Jeffrey asserts in his appellate briefing that he "stood to *lose,* $31,499.50 if his legal arguments were successful." He also testified that from an income tax perspective, it would be better if Joan received the IRA outright.

sides in a dispute between competing parties, each claiming to be the true beneficiary of the trust."). Indeed, IRA trustees and custodians have frequently filed interpleaders when there are conflicting beneficiary claims. *See, e.g.*, *UBS Fin. Servs. v. Brescia*, 24 F. Supp. 3d 128, 130 (D.N.H. 2014); *Rainess v. Est. of Machida*, 81 So. 3d 504, 508 (Fla. Dist. Ct. App. 2012); *Gen. Mills Fed. Credit Union v. Lofgren*, 839 N.W.2d 766, 767–68 (Minn. Ct. App. 2013); *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 981 N.E.2d 839, 841 (Ohio 2012).

Our caselaw does not have a direct counterpart to *Northern Trust v. Heuer*. Nevertheless, as Jeffrey notes, in a somewhat different context we have said,

> A trustee has no authority to employ counsel at the expense of the estate to represent the interest of one beneficiary in hostility to that of another. To permit him to do so would be to allow the trustee to pay from the property of one litigant the counsel fees of his opponent.

*In re Spilka's Will*, 97 N.W.2d 625, 627–28 (Iowa 1959) (quoting *Fleming v. Casady*, 211 N.W. 488, 493 (Iowa 1926)); *see also In re Lunt*, 16 N.W.2d 25, 37 (Iowa 1944) ("While it is the duty of the trustees to protect and conserve the trust property yet as between the various beneficiaries they stand indifferent."); Restatement (Third) of Trs. § 79 cmt. *c*, at 131 (Am. L. Inst. 2007) ("[T]he duty of impartiality . . . applies to situations in which controversies arise among the beneficiaries concerning their rights and beneficial interests in the trust. For example, in petitions for instruction or other litigation involving the interpretation of the beneficial-interest provisions of a trust . . . , it is the duty of the trustee not to become an advocate but to remain neutral.").

U.S. Bank does not explain why it spent over $200,000 on legal fees and costs vindicating Joan's rights as a beneficiary when a separate counsel had appeared on her behalf. In reality, this was a family dispute in which the bank had no interest of its own. Even if U.S. Bank did not file an interpleader, it could have taken a passive role in the declaratory judgment action and left the prosecution of the litigation up to the attorney for Joan's conservator. Just as Jeffrey seems to have litigated primarily to make a point, so too does the bank. The difference here is that someone else was ordered to pay the bank's attorney fees.

The district court reasoned that U.S. Bank was "simply asking the Court for direction on how to follow the contractual mandate." But the bank went well beyond that. The district court also reasoned, "If Jeffrey's interpretation were to be taken literally, then any person could come to U.S. Bank and say I am a beneficiary of Richard's IRA and U.S. Bank would be powerless to take any action other than interpleader, despite the fact that the person's claim is without merit." We share this concern, but we see a difference between a hypothetical claim advanced by a stranger and the intrafamily squabble involved in this case.

U.S. Bank argues that Jeffrey's caselaw is distinguishable because of the terms of the IRA agreement here. The bank relies on the language in the IRA agreement that it "*will be* reimbursed from the assets and otherwise indemnified and held harmless by [Richard] for . . . [its] legal fees . . . ." (Emphasis added.) U.S. Bank argues that because the foregoing contract term required indemnification, the district court lacked its normal authority to review attorney

fees for reasonableness. The district court accepted this proposition, characterizing the situation as one of "contractual indemnification."

We respectfully disagree:

> We have held that indemnification clauses that use the terms "indemnify" and "hold harmless" evidence the parties' intent to protect a party from claims brought by third parties. Accordingly, an indemnity clause in a contract cannot be used to shift attorney fees between the parties "unless the language of the clause shows an intent to clearly and unambiguously shift the fees."

*Retterath*, 938 N.W.2d at 708 (internal citations omitted) (quoting *NevadaCare, Inc. v. Dep't Hum. Servs.*, 783 N.W.2d 459, 471 (Iowa 2010)). U.S. Bank was not seeking indemnification or seeking to be held harmless after having been sued by a third party. It sued the family.

We agree that U.S. Bank could seek recovery of attorney fees from the IRA assets pursuant to the separate contractual provision allowing it to employ attorneys and be reimbursed for those expenses. Yet this entitlement is subject to the underlying requirements that the amounts incurred be reasonably necessary and that the bank abide by its fiduciary duty not to unreasonably deplete the IRA assets. *See* Iowa Code § 633A.4204 (2020) ("A trustee may only incur costs that are reasonable in relation to the trust property, purposes, and other circumstances of the trust."). U.S. Bank's agreement with Richard clearly established a trust relationship. The 2017 agreement is a "trust agreement." It refers to the arrangement as a "trust," to Richard as "grantor," and to U.S. Bank as "trustee." There is no disclaimer of fiduciary duties in that agreement. *See Masi v. Ford City Bank & Tr. Co.*, 779 F.2d 397, 401 (7th Cir. 1985) ("One must recognize that IRAs are not regular savings accounts. They clearly are special

deposits that constitute a trust relationship wherein the Bank owes a fiduciary duty to the depositor.").

We also note that the conservator for Joan, the sole beneficiary of the IRA, does not oppose payment of the full amount of attorney fees sought by U.S. Bank from the IRA assets. Still: "[a] conservator is a fiduciary." Iowa Code § 633.641(1). The conservator's attorney fees are themselves subject to court approval. *Id.* § 633.200 ("The court shall allow and fix from time to time the compensation for fiduciaries, other than personal representatives, and their attorneys for such services as they shall render as shown by an itemized claim or report . . . ."). A conservator does not have carte blanche to approve a payment of attorney fees out of funds that otherwise belong to the ward. This is true whether the attorney fees are technically those of the conservator or those of a third party acting on behalf of the conservator. This also explains, of course, why Joan's conservator sought approval from the probate court.

So the issue we must address is whether the total attorney fees being charged to Joan for the declaratory judgment action are reasonable. As we have previously noted, we do not believe the district court abused its discretion in determining that the overall amount of Simmons Perrine attorney fees in the litigation with Jeffrey was reasonable. *Someone* had to respond to Jeffrey's many litigation arguments, and Simmons Perrine did most of the work. The issue is whether two separate teams of attorneys—the conservator's and U.S. Bank's—should have been advocating on Joan's behalf. We conclude they should not have been. We hold that the district court abused its discretion in authorizing

both Simmons Perrine's fees and the conservator's own fees in the declaratory judgment action to be charged to Joan, the protected person. We therefore affirm in part, reverse in part, and remand this proceeding to the district court with instructions to revise the award to U.S. Bank by deducting the amount of any attorney fees and expenses awarded to the conservator's attorneys with respect to the declaratory judgment action.

**V. Conclusion.**

The order of the district court awarding $204,969.42 in attorney fees and expenses is affirmed in part and reversed in part, and this case is remanded to the district court for a new award of attorney fees and expenses in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Waterman and May, JJ., who take no part.